UNITED STATES of America,
Plaintiff–Appellee,

v.

Joe Luis SAUCEDO, Defendant–
Appellant.

No. 91–6126.

United States Court of Appeals,
Tenth Circuit.

Nov. 13, 1991.

in a separate memorandum disposition filed    simultaneously with this opinion.

William P. Earley, Asst. Federal Public Defender, Oklahoma City, Okl., for defendant-appellant.

F. Michael Ringer, Asst. U.S. Atty., Oklahoma City, Okl. (Timothy D. Leonard, U.S. Atty., with him on the brief), for plaintiff-appellee.

Before BALDOCK and EBEL, Circuit Judges, and ANDERSON, District Judge.*

BALDOCK, Circuit Judge.

Defendant-appellant, Joe Luis Saucedo, appeals his Sentencing Guidelines sentence, following his guilty plea to possession of cocaine with intent to distribute. 21 U.S.C. 841(a)(1). Defendant contends that the district court erred by (I) considering conduct other than that for which he was convicted in imposing a three-level upward adjustment for a managerial or supervisorial role in the offense, U.S.S.G. § 3B1.1(b); (II) imposing a two-level upward adjustment for possession of a firearm during the commission of the offense without any evidence that he had the requisite scienter, *id.* § 2D1.1(b)(1); and (III) including certain quantities of drugs in the base offense level calculation without any evidence that they were part of a common plan or scheme. *Id.* § 2D1.1(a)(3). The government contends that defendant waived these issues by failing to object, and, in any event, the district court properly applied the guidelines. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(2).

This case has an unusual procedural background, an understanding of which is necessary to our decision. On January 5, 1989, defendant was indicted on twenty-four counts relating to narcotics trafficking, conspiracy and operating a criminal enterprise. On February 27, 1989, defendant pled guilty to count 20 which charged that, on or about November 16, 1988, he and a codefendant possessed 780 grams of cocaine with intent to distribute. On April 10, 1989, defendant filed objections to the presentence report[1] alternatively with a motion to withdraw his guilty plea. On June 2, 1989, the district court allowed defendant to withdraw his guilty plea and enter a plea of not guilty because his lawyer failed to advise him properly on the application of the sentencing guidelines to his offense.

Jury trial commenced on June 14, 1989, and two days later, on June 16, 1989, the district court granted defendant leave to withdraw his not guilty plea and plead guilty to count 20. The record indicates that defendant waived the ten-day notice of the presentence report. I R. doc. 145. The earlier presentence report was revised, and neither defendant nor his counsel expressed any objections to the report.[2] On June 20, 1989, defendant was sentenced to 130 months,[3] and the remaining counts of the indictment were dismissed.

On August 2, 1990, defendant filed a pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, raising four separate grounds for relief.[4]

---

* The Honorable Aldon J. Anderson, Senior United States District Judge, District of Utah, sitting by designation.

1. Defendant's objections to the presentence report included the errors assigned in this appeal. *See* I R. doc. 116 at 5–13.

2. The transcript from the June 1989 sentencing hearing reveals the following colloquy between the district judge, defense counsel and defendant:

> Court: Counsel, have you had a chance to review the most recent presentence report? Defense counsel: Yes, we have, your honor, both the defendant and we [sic] have done it and there are no modifications or alterations which we would request at this time.
>
> .    .    .    .    .
>
> Court: Mr. Joe Luis Saucedo, is there anything you want to say before I pass sentence? Defendant: Yes, sir. I'd like to say that I know I did wrong, I'm sorry. I just want to start a new life the right way.

II R. at 4–5. *See also* III R. (presentence report).

3. The sentence reflected a total offense level of 31, which included a base offense level of 28 based on an equivalent of 3.3 kilograms of cocaine, U.S.S.G. § 2D1.1(a)(3), a two-point upward adjustment for possession of a firearm, *id.* § 2D1.1(b)(1), a three-point upward adjustment for a managerial or supervisorial role in criminal activity involving five or more persons, *id.* § 3B1.1(b), and a two-point downward adjustment for acceptance of responsibility. *Id.* § 3E1.1. Defendant's criminal history category was I. Therefore, his guideline range was 108 to 135 months. *See* III R. ¶¶ 15–26.

4. Defendant filed an earlier pro se motion pursuant to 28 U.S.C. § 2255, on February 9, 1990, alleging that his guilty plea was not knowing and voluntary, and the firearms and role in the offense adjustments were erroneous. I R. doc. 185 at 6–7. The district court denied defendant's sentencing guidelines claims as procedur-

Defendant asserted, inter alia, ineffective assistance of counsel based on his counsel's erroneous estimate of a two-to-six-year sentence, and counsel's failure, despite defendant's request, to appeal the sentence. I R. doc. 202 at 6. Following an evidentiary hearing, the district court found that defense counsel failed to advise defendant of his right to appeal, and defendant was unaware of it until the time for filing a notice of appeal had passed. I R. doc. 231 at 2–3. On March 19, 1991, the district court simultaneously vacated defendant's sentence of June 20, 1989, and reimposed it exactly as previously entere⁻¹, and informed the defendant of his ri⁻ht to appeal. The record indicates that the district court acted solely by its order filed March 19, 1991. Defendant's appeal of his March 19, 1991, sentence is now before us.

█ The district court's remedy in granting defendant's § 2255 motion was designed to put defendant back into the position he would have been had counsel perfected a timely notice of appeal. *See United ed States v. Davis,* 929 F.2d 554, 557 (10th Cir.1991). Therefore, we must look back to the June 1989 sentencing hearing to determine whether defendant adequately preserved the alleged sentencing errors for appeal. After specific inquiry by the district court, neither defense counsel nor defendant objected to the presentence report[5] which was the basis for the district court's imposition of a 130 month sentence.

"Normally, failure to alert the trial court to an error precludes review of that same issue by this court." *United States v. Frederick,* 897 F.2d 490, 494 (10th Cir.) (citing *United States v. Mitchell,* 783 F.2d 971, 975 (10th Cir.), *cert. denied,* 479 U.S. 860, 107 S.Ct. 208, 93 L.Ed.2d 138 (1986)), *cert. denied,* —— U.S. ——, 111 S.Ct. 171,

112 L.Ed.2d 135 (1990). *See also United States v. Rios–Ramirez,* 929 F.2d 563, 566 n. 2 (10th Cir.1991) (defendant who fails to draw district court's attention to U.S.S.G. § 6A1.3, which provides procedure for resolving sentencing factors in dispute, waives issue of noncompliance with § 6A1.3 on appeal). However, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Fed.R.Crim.P. 52(b). Defendant's failure to object to the presentence report precludes us from considering the merits of defendant's claims unless such claims constitute plain error.

█ "[T]he plain-error exception to the contemporaneous-objection rule is to be 'used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (quoting *United States v. Frady,* 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982)). In order to invoke the exception, the error must be "particularly egregious," *id.* (quoting *Frady,* 456 U.S. at 163, 102 S.Ct. at 1592), as well as "obvious and substantial." *United States v. Jefferson,* 925 F.2d 1242, 1254 (10th Cir.1991) (citations omitted). *See also United States v. Mitcheltree,* 940 F.2d 1329, 1334 (10th Cir. 1991). "We will, however, apply the plain error rule less rigidly when reviewing a potential constitutional error." *Jefferson,* 925 F.2d at 1254 (citations omitted).

I

Defendant first contends that the district erred by considering conduct other than that for which he was convicted in impos-

---

ally barred by the failure to take a direct appeal. I R. doc. 196 at 4–5. The district court rejected defendant's claim that his guilty plea was not knowing and voluntary. *Id.* at 5–6. Defendant did not appeal this decision.

5. *See supra* note 2. While a pro se pleading is entitled to liberal construction, *see Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), defendant's § 2255 motion did not allege ineffective assistance of

counsel due to defense counsel's failure to object to the presentence report. *Cf. Beasley v. McCotter,* 798 F.2d 116, 118 n. 1 (5th Cir.1986) (petitioner's claim that counsel was ineffective for failing to litigate alleged deprivation of constitutional rights did not preserve issue for appeal of counsel's ineffectiveness in adequately advising petitioner prior to guilty plea), *cert. denied,* 479 U.S. 1039, 107 S.Ct. 897, 93 L.Ed.2d 848 (1987).

ing a three-level upward adjustment for a managerial or supervisorial role in the offense. The guidelines provide for a three-level enhancement if, "[b]ased on the defendant's role in the offense, ... the defendant was a manager or supervisor ... and the criminal activity involved five or more participants or was otherwise extensive...." U.S.S.G. § 3B1.1(b). In *United States v. Pettit*, 903 F.2d 1336 (10th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 197, 112 L.Ed.2d 159 (1990), we held that "the plain language of the Guidelines § 3B1.1 requires that the sentencing court focus on the 'defendant's role in the offense,' rather than other criminal conduct." *Id.* at 1341. *See also United States v. Reid*, 911 F.2d 1456, 1464 (10th Cir.1990) ("the defendant's role is considered only in relation to the offense of conviction, we do not look at all to relevant conduct"), *cert. denied,* —— U.S. ——, 111 S.Ct. 990, 112 L.Ed.2d 1074 (1991). Thus, under *Pettit*, the adjustment is proper only if "defendant maintained a [managerial or supervisorial] role in the transaction on which his conviction is based," *United States v. Mourning*, 914 F.2d 699, 705 (5th Cir.1990), and only if the criminal activity for which defendant was convicted involved five or more participants. *Reid*, 911 F.2d at 1464–65; *United States v. Lanese*, 890 F.2d 1284, 1293 (2d Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 2207, 109 L.Ed.2d 533 (1990).

■ In *United States v. Riles*, 928 F.2d 339 (10th Cir.1991), we interpreted the same version of the guidelines at issue in *Pettit* as requiring the sentencing court to consider all relevant conduct in determining whether a defendant is entitled to a downward adjustment for a mitigating role in the offense pursuant to U.S.S.G. § 3B1.2. *Id.* at 343. Contrary to our holding in *Pettit*, we held that "in deciding whether the defendant played a minimal or minor role ... in a drug offense, a sentencing court properly considers his role in all distributions which are part of the same pattern of conduct." *Id. Riles* and *Pettit* are fundamentally at odds and lack any principled distinction.[6] We see no reason why all relevant conduct should be considered for a mitigating role downward adjustment, but not for an aggravating role upward adjustment.[7]

Notwithstanding *Riles*, *Pettit* was the law of this circuit with respect to the scope of conduct that may be considered in determining aggravating role adjustments pursuant to U.S.S.G. § 3B1.1. *Riles*, which addressed mitigating role adjustments pursuant to § 3B1.2, did not, nor could not, overrule *Pettit*. *See United States v. Spedalieri*, 910 F.2d 707, 710 n. 3 (10th Cir. 1990) (three-judge panel cannot overrule circuit precedent). Indeed, *Riles* does not even cite *Pettit*, much less discuss its contrary analysis in determining role in the offense adjustments. *Pettit* is squarely on point as to the specific guideline and relevant facts at issue in the case before us. A

---

**6.** The Ninth Circuit has stated that its consideration of offense specific conduct in mitigating role adjustments while considering all relevant conduct in aggravating role adjustments "furthers the goals of sentence uniformity and proportionality." *United States v. Lillard,* 929 F.2d 500, 503 (9th Cir.1991). The *Lillard* court reasoned that "[a] defendant who is part of a large drug conspiracy but convicted only of possession, should not be rewarded for his participation in the conspiracy by receiving a lighter sentence than one who was convicted of possession but had no connections to a larger scheme ... [while] a defendant, who is a leader of a drug operation but is only convicted of possession, should receive a harsher sentence through § 3B1.1 than his codefendant, the errand boy." *Id.* Any tendency that the Ninth Circuit's distinction between aggravating and mitigating role adjustments has to further the goals of

uniformity and proportionality does not necessarily mean that our opposite distinction thwarts these goals. Indeed, by permitting all relevant conduct to be considered in determining mitigating role adjustments, *Riles*, 928 F.2d at 343, we insure that the "errand boy" who is caught with the drugs and convicted of possession may still receive a mitigating role adjustment for his minor role in the larger conspiracy. We respectfully point this out only to amplify the hollow ring of such anecdotal policy justifications for admittedly erroneous distinctions.

**7.** In light of the November 1990 amendment, *see infra, Riles* appears to be consistent with the intent of the Sentencing Commission to consider all relevant conduct for both mitigating and aggravating role in the offense adjustments.

district court, unable to distinguish *Pettit,* would be compelled to follow it. *Id.* at 709.

Subsequent to *Pettit,* the Sentencing Commission amended the Introductory Commentary to Chapter 3, Part B, stating, in relevant part, that "[t]he determination of a defendant's role in the offense is to be made on the basis of all conduct within the scope of section 1B1.3 (Relevant Conduct) ... and not solely on the basis of elements and acts in the count of the conviction." United States Sentencing Comm'n, *Guidelines Manual,* Ch. 3, Pt. B, intro. comment., at 3.5 (Nov.1990). This amendment was effective November 1, 1990. *Id.* App.C, ¶ 345, at C.189. Under the amendment, a sentencing court may consider the underlying scheme, as opposed to merely the offense of conviction, in determining role in the offense adjustments. *See United States v. Caballero,* 936 F.2d 1292, 1298–99 (D.C.Cir.1991) ("section 3B1 [in light of amendment] allows the sentencing judge to look to the contours of the underlying scheme itself rather than mere elements of the offense charged") (citations and internal quotations omitted). The amendment clearly alters the analysis we adopted in *Pettit.*[8]

■ Generally, a court is required to apply the guidelines, including "any pertinent policy statement issued by the Commission," that are in effect on the date the defendant is sentenced. 18 U.S.C. §§ 3553(a)(5), (a)(4). *See also United States v. Brunson,* 907 F.2d 117, 120 (10th Cir.1990). Here, the sentence from which defendant appeals was imposed in March 1991. Although the March 1991 sentencing court merely reimposed the sentence exactly as it had been imposed in June 1989, our appellate jurisdiction results from the March 1991 sentencing. Therefore, the date defendant was sentenced, for purposes of determining the applicable version of the guidelines, is March 1991. Because we have determined en banc that, in light of the November 1990 amendment to the commentary, relevant conduct may be con-

sidered in determining a § 3B1.1 adjustment, *see supra* note 8, under the law in effect at the time defendant was sentenced, there was no error.

■ Notwithstanding the general rule that we apply the guidelines in effect at the date of sentencing, "the ex post facto clause prohibits retroactive application of a changed guideline if the change disadvantages the defendant." *United States v. Underwood,* 938 F.2d 1086, 1090 (10th Cir. 1991). In *Underwood,* the defendant committed his offense prior to the November 1989 amendment to U.S.S.G. § 1B1.3 (relevant conduct), which eliminated a finding of scienter in determining, inter alia, specific offense characteristics. We applied the pre-amendment guidelines in determining whether he should receive a two-level enhancement pursuant to § 2D1.1(b)(1) (possession of a firearm during the commission of a drug trafficking offense). *Id.* at 1089–90. We reasoned that application of the post-amendment guidelines would violate the ex post facto clause, despite the fact that this circuit had not previously held that a finding of scienter was required for a firearms enhancement. *Id.*

The November 1990 amendment at issue here did not change the actual text of U.S.S.G. § 3B1.1, but rather merely amended the commentary. Indeed, the actual text of § 3B1.1 is the same now as it was in November 1988 when defendant committed his offense. However, the commentary is "essential in correctly interpreting and uniformly applying the guidelines on a national basis." *United States v. Rutter,* 897 F.2d 1558, 1561 (10th Cir.) (citations omitted), *cert. denied,* — U.S. —, 111 S.Ct. 88, 112 L.Ed.2d 60 (1990). *See also Brunson,* 907 F.2d at 1120; *United States v. Smith,* 900 F.2d 1442, 1447 (10th Cir.1990). A stated purpose of the commentary is to "interpret the guideline or explain how it is to be applied." U.S.S.G. § 1B1.7. The commentary has "the force of policy statements" and provides guidance to courts in

---

**8.** We have reconsidered *Pettit* in light of the November 1990 amendment and presented this issue to the en banc court. The court has voted unanimously that, in light of the amendment, a

sentencing court may consider conduct other than that for which the defendant was convicted in determining aggravating role adjustments pursuant to U.S.S.G. § 3B1.1.

discerning the intent of the drafters similar to that provided by legislative history. *Id.,* comment. Because we "must ... interpret the guidelines in a way that most likely reflects the intent of the Commission," *United States v. Anderson,* 942 F.2d 606, 611 (9th Cir.1991), we are bound by the commentary unless it cannot be reconciled with the express terms of the guideline.[9] Therefore, because the amended commentary interprets § 3B1.1 contrary to *Pettit,* the November 1990 amendment represents a change in the law.[10]

■ We reach this conclusion despite the Sentencing Commission's expressed intent that the purpose of the amendment was to "clarif[y] the conduct that is relevant to the determination of Chapter Three, Part B...." *Guidelines Manual,* App. C, ¶ 345, at C.189. Generally, when amendments merely clarify pre-existing guidelines, "their retrospective application presents no ex post facto issue." *United States v. Restrepo,* 903 F.2d 648, 656 (9th Cir.1990) (citations omitted). Courts frequently consider clarifying amendments to discern the Sentencing Commission's intent as to application of the pre-amendment guideline. *See, e.g., United States v. Urbanek,* 930 F.2d 1512, 1514–15 (10th Cir. 1991); *United States v. Walker,* 930 F.2d 789, 793 (10th Cir.1991); *United States v. Irvin,* 906 F.2d 1424, 1427 (10th Cir.1990); *Restrepo,* 903 F.2d at 656; *United States v. Aguilera–Zapata,* 901 F.2d 1209, 1213–14 (5th Cir.1990); *United States v. Smith,* 887 F.2d 104, 107–08 (6th Cir.1989); *United States v. Scroggins,* 880 F.2d 1204, 1215 (11th Cir.1989), *cert. denied,* 494 U.S. 1083, 110 S.Ct. 1816, 108 L.Ed.2d 946 (1990); *United States v. Guerrero,* 863 F.2d 245, 250 (2d Cir.1988). However, when we are required to overrule precedent in this circuit in order to interpret the guideline consistent with the amended commentary, we cannot agree with the Sentencing Commission that the amendment merely clarified the pre-existing guideline.[11] *See Guerrero,*

9. Although *Pettit* interpreted the "plain language" of § 3B1.1 as limiting the scope of conduct that may be considered to the offense of conviction while the amended commentary states that all relevant conduct may be considered, the plain language of § 3B1.1 does not preclude the interpretation afforded by the amended commentary. *See Riles,* 928 F.2d at 343 (interpreting § 3B1.2 as permitting consideration of relevant conduct other than that for which the defendant was convicted).

10. The Fifth Circuit's distinction between an amendment to the commentary and an amendment to a guideline, *see United States v. Suarez,* 911 F.2d 1016, 1021 n. 3 (5th Cir.1990), is inapplicable when the amended commentary compels an interpretation of the guideline contrary to the pre-amendment interpretation.

11. In *Caballero,* the D.C. Circuit held that because the November 1990 amendment was not intended to change the law, it could be applied in determining whether the defendant was entitled to a mitigating role adjustment even though defendant's sentence was imposed prior to the effective date of the amendment. 936 F.2d at 1299 n. 8. The court reached this conclusion despite its prior decision limiting pre-amendment aggravating role adjustments to offense specific conduct. *United States v. Williams,* 891 F.2d 921, 925–26 (D.C.Cir.1989). However, *Caballero* is not inconsistent with our reasoning because the court was not required to overrule *Williams,* an aggravating role case, in order to interpret the mitigating role adjustment consistent with the amended commentary. Further, the amendment's interpretation of the mitigating role adjustment benefitted rather than disadvantaged the defendant, thereby removing any ex post facto concern.

In *Lillard,* the Ninth Circuit held that all relevant conduct could be considered in determining an aggravating role adjustment when the offense was committed prior to the November 1990 amendment. 929 F.2d at 503. The court had distinguished its previous holding that only offense specific conduct could be considered in determining mitigating role adjustments. *See United States v. Zweber,* 913 F.2d 705, 708 (9th Cir.1990). Although the *Zweber* court cited aggravating role cases from other circuits and indicated that its reasoning extended to aggravating role adjustments, *id.* at 709, the *Lillard* court dismissed this as dicta. *Lillard,* 929 F.2d at 503. Accordingly, the court did not have to address the potential ex post facto issue. The present case is distinguishable from *Lillard* because we can not write off our holding in *Pettit* as dicta.

The Fifth Circuit has held its preamendment interpretation of aggravating role adjustments, which limited the scope of conduct to "the transaction on which [the] conviction is based," *Mourning,* 914 F.2d at 705, to be consistent with the amended commentary by effectively broadening its definition of "transaction" to encompass relevant conduct. *See United States v. Mir,* 919 F.2d 940, 944–45 (5th Cir.1990) (per curiam). In so doing, the court avoided the ex

863 F.2d at 250 (Sentencing Commission's statement that amendment was intended to clarify guideline "cannot be accepted as conclusive" because such a result "would enable the Commission to make substantive changes in the guise of clarification"). *See also Early v. United States,* — U.S. —, 112 S.Ct. 330, 116 L.Ed.2d 270, 271 (1991) (White, J., dissenting from denial of cert.) ("[a] majority of the Courts of Appeal have applied ... an amendment [to the commentary to sentencing occuring prior to the amendment] when it clarified, *but did not substantially change,* the operation of the existing guideline") (emphasis added) (citations omitted). Circuit courts are empowered to determine whether sentences are imposed in accordance with the law and whether the guidelines have been properly applied. 18 U.S.C. § 3742(f). Our jurisdictional grant of authority necessarily implies that our interpretation of a guideline has the force of law until such time as the Sentencing Commission or Congress changes the actual text of the guideline. The Sentencing Commission's post hoc clarification of its intent does not invalidate our pre-amendment interpretation of the guideline. The November 1990 amendment is a substantive change to § 3B1.1 in this circuit, thereby implicating the ex post facto clause.

■ The ex post facto clause prohibits Congress from enacting any law which, inter alia, "changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed," [12]

*Calder v. Bull,* 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798). *Accord Miller v. Florida,* 482 U.S. 423, 429, 107 S.Ct. 2446, 2450–51, 96 L.Ed.2d 351 (1987). "[C]entral to the ex post facto prohibition is a concern for 'the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was when the crime was consummated.'" *Miller,* 482 U.S. at 430, 107 S.Ct. at 2451 (quoting *Weaver v. Graham,* 450 U.S. 24, 30, 101 S.Ct. 960, 965, 67 L.Ed.2d 17 (1981)). In order for a law to be ex post facto:

first, the law must be retrospective, that is it must apply to events occuring before its enactment; and second, it must disadvantage the offender affected by it.... [N]o ex post facto violation occurs if a change does not alter substantial personal rights, but merely changes modes of procedure which do not affect matters of substance.

*Id.* (citations and internal quotations omitted).

■ We recognize the retrospective application of U.S.S.G. § 3B1.1. Defendant's offense occurred in November 1988, two years prior to the amendment. Moreover, the amendment clearly affects "matters of substance." Application of § 3B1.1(b) consistent with the amended commentary leads to a three-level increase in defendant's offense level, thereby increasing the guideline range from 78–97 months to 108–135 months. *See Miller,* 482 U.S. at 433–35, 107 S.Ct. at 2452–54 (amended state

post facto issue. We decline to perform such judicial sleight of hand and make constitutional issues disappear.

**12.** We recognize that "[t]he ex post facto clause is a limitation upon the powers of the Legislature." *Marks v. United States,* 430 U.S. 188, 191, 97 S.Ct. 990, 992, 51 L.Ed.2d 260 (1977). Nonetheless, we have no trouble applying it to an act by the Sentencing Commission. Although the Sentencing Commission was established "as an independent commission in the judicial branch of the United States," 28 U.S.C. § 991(a), the Supreme Court has recognized that "the Commission ... is an independent agency in every relevant sense." *Mistretta v. United States,* 488 U.S. 361, 393, 109 S.Ct. 647, 665, 102 L.Ed.2d 714 (1989). Further, "the Commission is fully accountable to Congress, which can revoke or amend any or all of the Guidelines as it sees fit

either within the 180–day waiting period, or at any time." *Id.* at 393–94, 109 S.Ct. at 665–66 (internal citation omitted). *See also* 28 U.S.C. § 994(p). Courts have uniformly recognized that the ex post facto clause prohibits a retroactive application of a sentencing guideline where it would disadvantage the defendant. *See Underwood,* 938 F.2d at 1090; *United States v. McAllister,* 927 F.2d 136, 138 n. 2 (3d Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 111, 116 L.Ed.2d 80 (1991); *United States v. Morrow,* 925 F.2d 779, 782 (4th Cir.1991); *United States v. Lam Kwong–Wah,* 924 F.2d 298, 304 (D.C.Cir. 1991); *United States v. Harotunian,* 920 F.2d 1040, 1041–42 (1st Cir.1990); *United States v. Swanger,* 919 F.2d 94, 95 (8th Cir.1990) (per curiam); *United States v. Worthy,* 915 F.2d 1514, 1515 n. 7 (11th Cir.1990); *Suarez,* 911 F.2d at 1021–22.

sentencing guideline increasing the presumptive sentence constituted substantive change); *United States v. Suarez*, 911 F.2d 1016, 1022 (5th Cir.1990) ("[b]ecause amended § 1B1.3 may increase [defendant's] punishment, the amendment is not simply a change in procedure which does not affect a matter of substance"). *See also Devine v. New Mexico Dep't of Corrections*, 866 F.2d 339, 343 n. 6 (10th Cir. 1989) (recognizing "effect on actual prison time as the decisive factor in evaluating the constitutionality of retroactively applied changes in ... sentencing laws").

The change in the law must also disadvantage defendant in order to be ex post facto. Prior to the amendment, *Pettit* was the law in this circuit regarding the scope of conduct that a sentencing court may consider in determining an aggravating role adjustment. The November 1990 amendment clearly disadvantages defendant as compared to the pre-amendment interpretation of § 3B1.1 recognized in *Pettit*. In the past, our cases have gone only this far. Finding that the amendment disadvantages the defendant, we have held that the defendant is entitled to an application of the law at the time the offense was committed. *See Underwood*, 938 F.2d at 1090; *United States v. Smith*, 930 F.2d 1450, 1452 n. 3 (10th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 225, 116 L.Ed.2d 182 (1991). In the present case, however, the fact that the amendment disadvantages defendant does not compel the conclusion that defendant is disadvantaged relative to the law in effect at the time he committed his offense. *Pettit* was not decided until May 1990, while defendant committed his offense eighteen months earlier in November 1988.

However, we interpret § 3B1.1, at the time of defendant's offense, consistent with *Pettit*. *See United States v. Padilla*, 947 F.2d 893, 894 (10th Cir.1991) (defendant committed offense in September 1988 and was sentenced prior to *Pettit;* court remanded for reconsideration of § 3B1.1 adjustment "in light of requirements of *Pettit* "). *Pettit* was based on the "plain language" of section § 3B1.1, and this language remained constant. Further, the

commentary to § 3B1.1 remained constant until November 1, 1990. Several other circuits interpreted § 3B1.1, prior to the amendment, as limiting the scope of conduct that may be considered to the offense of conviction. *See Mourning*, 914 F.2d at 704–05; *United States v. Tetzlaff*, 896 F.2d 1071, 1074–75 (7th Cir.1990); *United States v. Williams*, 891 F.2d 921, 925 (D.C.Cir. 1989); *Lanese*, 890 F.2d at 1293. Although the Sentencing Commission has since clarified its intended meaning of § 3B1.1 contrary to *Pettit*, we are unwilling to abandon our reasoning in *Pettit* in order to interpret § 3B1.1, as of November 1988, consistent with the November 1990 amendment. As stated earlier, the amendment represents a substantive change in the law. Because the November 1990 amendment disadvantaged defendant relative to the law in effect at the date of his offense, we are required to apply the pre-amendment interpretation of § 3B1.1. *Underwood*, 938 F.2d at 1090; *Smith*, 930 F.2d at 1452 n. 3.

▪ The record indicates and the government concedes that the district court considered conduct of defendant other than that for which he was convicted. Appellee's Brief at 29. The only allegations in the presentence report supporting the § 3B1.1(b) adjustment are that "defendant was involved in importing drugs, recruiting drivers, selling drugs, and returning the proceeds to his father." III R. ¶ 17. To permit this broad formulation of defendant's conduct to support a § 3B1.1(b) adjustment contravenes our pre-amendment interpretation of this guideline because defendant was not convicted of importing, transporting or selling drugs, but rather he was convicted of possession with intent to sell.

▪ The district court's misapplication of § 3B1.1 results in obvious and substantial error. Failure to consider this issue would result in a manifest injustice given the effect that the § 3B1.1(b) adjustment has on defendant's overall prison term. Plain error is present when the record indicates that the sentence was imposed based

on erroneous interpretation of the law. *See, e.g., Jefferson,* 925 F.2d at 1259 (sentence imposed under erroneous belief that district court had no discretion to consider downward departure was plain error); *United States v. Smith,* 919 F.2d 123, 125–26 (10th Cir.1990) (fine exceeding applicable guideline range was plain error when record was silent as to whether the court intended upward departure). Moreover, "the imposition of an illegal sentence constitutes plain error." *United States v. Wainwright,* 938 F.2d 1096, 1098 (10th Cir. 1991) (citing *United States v. Vance,* 868 F.2d 1167, 1169 (10th Cir.1989)). An "illegal sentence" is one which, inter alia, " 'the judgment of conviction did not authorize.' " *Id.* (quoting *United States v. Morgan,* 346 U.S. 502, 506, 74 S.Ct. 247, 250, 98 L.Ed. 248 (1954)).

In the present case, the judgment of conviction did not authorize an aggravating role adjustment pursuant to § 3B1.1(b) because there is nothing in the record to indicate that defendant was a manager or supervisor in the criminal activity for which he was convicted or that five or more people were involved in that activity. Further, the application of the post-amendment interpretation of § 3B1.1 violates the ex post facto clause. *See United States v. McCall,* 915 F.2d 811, 816 (2d Cir.1990) ("ex post facto violation ... might be plain error"); *United States v. Brown,* 555 F.2d 407, 420 (5th Cir.1977) (ex post facto violation can be noticed under plain error doctrine), *cert. denied,* 435 U.S. 904, 98 S.Ct. 1448, 55 L.Ed.2d 494 (1978). Given our relaxed standard in the plain error analysis when reviewing a potential constitutional error, *Jefferson,* 925 F.2d at 1254, we hold that the district court's consideration of defendant's role in conduct other than that for which he was convicted was plain error.

## II

Defendant next asserts that the district court erred by imposing a two-level upward adjustment for possession of a firearm during the commission of the offense without any evidence that he had the requisite scienter. The guidelines prescribe a two-level increase in the base offense level for drug trafficking offenses "[i]f a dangerous weapon ... was possessed *during* commission of the offense." U.S.S.G. § 2D1.1(b)(1). The commentary to § 2D1.1 states that "[t]he adjustment [for weapons possession] should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Id.,* comment. (n. 3).

Defendant contends that the § 2D1.1(b)(1) adjustment is based on the erroneous finding that the house where the weapon was found was maintained by defendant. *See* III R. ¶ 17. In fact, the house was maintained by the codefendant.[13] According to defendant, no record evidence indicates that he had any knowledge that the weapon was in the house or that the weapon was being used during the commission of a drug trafficking offense.

The government does not dispute that defendant neither owned the gun nor maintained the residence where the gun was found. Rather, the government argues that "all acts or omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction," should be considered, *see* U.S.S.G. § 1B1.3(a)(2), and that possession rather than ownership is the critical inquiry in determining the applicability of § 2D1.1(b)(1). The government relies on *United States v. Goddard,* 929 F.2d 546 (10th Cir.1991), which affirmed an adjustment pursuant to § 2D1.1(b)(1) in a drug conspiracy conviction based on a coconspirator's possession of a firearm. *Goddard* is distinguishable because there the defendant knew that his codefendant possessed a weapon during the course of the conspiracy, albeit not necessarily at the time of his

---

**13.** The record supports defendant's contention. Specifically, defendant's address is listed in the presentence report as "510 K S.W., Childress, Texas 79201," III R. 1, while the location where the weapon was discovered is listed as "6201 South Klien, [Oklahoma City]." *Id.* ¶ 7. The indictment charges that the 6201 South Klien address is the residence of the codefendant, defendant's brother, I R. doc. (Indictment Jan. 5, 1989) at 20 (count 22). Further, the presentence report indicates that the codefendant admitted ownership of the weapon. III R. ¶ 8.

arrest. *Id.* at 549 (defendant's sentence increased "because of his knowing and voluntary complicity with the possessor of the gun where he knew the gun was present and it was connected to the conspiracy"). Therefore, *Goddard* does not control.

Under the pre-November 1989 guidelines, a finding of scienter is required to support an adjustment under § 2D1.1(b)(1), while under the present guidelines "scienter is not required; simple possession alone will suffice for a firearms enhancement." *Underwood,* 938 F.2d at 1090 (citations omitted). Specifically, for cases arising under the pre-November 1989 guidelines, "a defendant who personally possesses a firearm during a drug offense is subject to the § 2D1.1(b)(1) adjustment only if he knowingly possessed the weapon or if he was criminally negligent in his unwitting possession." *Id. See also United States v. Burke,* 888 F.2d 862, 867–68 (D.C.Cir.1989). Defendant's offense occurred in November 1988. The ex post facto clause requires us to apply the pre-November 1989 guidelines because the present guidelines eliminate the government's burden of proving scienter. *Underwood,* 938 F.2d at 1090. Thus, the government was required to prove by a preponderance of the evidence that defendant knew or had reason to know that the weapon was used in the commission of the offense.

Defendant's knowledge or lack thereof is a factual issue, which we would review under a clearly erroneous standard, had defendant properly objected at sentencing. *See United States v. McFarlane,* 933 F.2d 898, 899 (10th Cir.1991). However, defendant did not raise this issue at sentencing; therefore, he has waived it. A factual dispute concerning the applicability of a particular guideline, not brought to the attention of the district court, does not rise to the level of plain error. *See United States v. Lopez,* 923 F.2d 47, 50 (5th Cir.) ("[q]uestions of fact capable of resolution by the district court upon proper objection at sentencing can never constitute plain error"), *cert. denied,* — U.S. —, 111 S.Ct. 2032, 114 L.Ed.2d 117 (1991).

A rule requiring a defendant to raise alleged factual inaccuracies in a presentence report before the district court in order to preserve the issue on appeal is consistent with Fed.R.Crim.P. 32(c)(3) governing disclosure of presentence reports. The district court is required "to afford the defendant and the defendant's counsel an opportunity to comment on the report" and may, in its discretion, allow the defendant "to introduce testimony or other information relating to any alleged factual inaccuracies...." Fed.R.Crim.P. 32(c)(3)(A). If factual inaccuracies in the presentence report are alleged, the district court is required to "make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing." *Id.* 32(c)(3)(D). Thus, when a defendant properly raises the disputed factual issues in the district court, a record sufficient to permit adequate review is thereby developed. On the other hand, when a defendant fails to raise the issue below, we have no factual record by which to review the application of the guidelines. *See Padilla,* 947 F.2d at 895 (failure to challenge factual inaccuracy of presentence report at sentencing under Fed.R.Crim.P. 32(c)(3)(A) waives right to challenge it on appeal). *See also United States v. Soliman,* 889 F.2d 441, 445 (2d Cir.1989). We hold that defendant's failure to raise this issue before the district court constitutes a waiver of the issue on appeal. *Cf. United States v. Pilgrim Mkt. Corp.,* 944 F.2d 14, 21 (1st Cir.1991) (defendant's failure to object to § 3B1.3 adjustment for abuse of trust waived issue on appeal); *United States v. Visman,* 919 F.2d 1390, 1393–94 (9th Cir.1990) (defendant's failure to object at sentencing to § 3C1.1 adjustment for obstruction of justice waived issue on appeal).

### III

Defendant's final contention is that the district court erred in including certain quantities of drugs in the base offense level calculation without any evidence that they were part of a common

plan or scheme. A sentencing court may aggregate the quantity of drugs involved in the count to which the defendant pled guilty with the quantity of drugs involved in the counts dismissed as long as the transactions involved in the dismissed counts were part of the same course of conduct or common scheme or plan as to the count to which defendant pled guilty. *United States v. Ruth*, 946 F.2d 110, 112 (10th Cir.1991); *Rutter*, 897 F.2d at 1562. *See also* U.S.S.G. § 1B1.3, comment. (backg'd). Whether the transactions involved in the dismissed counts were part of the same course of conduct or common scheme or plan as the count to which defendant pled guilty is a "fact-intensive inquiry," *United States v. Shewmaker*, 936 F.2d 1124, 1129 (10th Cir.1991), that must be raised at sentencing pursuant to Fed. R.Crim.P. 32 in order to preserve the issue for appeal. Because defendant's dispute is entirely factual, he waived the issue by failing to object at sentencing, and it does not constitute plain error. *See United States v. Macias*, 930 F.2d 567, 569–70 (7th Cir.1991) (defendant's failure to object to narcotics used in determining base offense level waived issue on appeal).

We REMAND to the district court with instructions to VACATE defendant's sentence and resentence him consistent with this opinion.