9 F.3d 1535
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
UNITED STATES, Appellee,
v.
Jose E. BONILLA-MARTINEZ, Defendant, Appellant.
UNITED STATES of America, Appellee,
v.
Mario TORRES-MELENDEZ, Defendant, Appellant.
 Nos. 92-2357, 93-1517.
 United States Court of Appeals,
First Circuit.
 November 12, 1993
 
 Appeals from the United States District Court for the District of Puerto Rico
 Carlos R. Noriega on brief for appellant, Jose E. Bonilla-Martinez.
 John C. Keeney, Acting Assistant Atttorney General, Mary Lee Warren, Chief, and William H. Kenety, Narcotic and Dangerous Drug Section, on brief for appellee No. 92-2357.
 Jeffrey A. Rabin on brief for appellant, Mario Torres-Melendez.
 Charles E. Fitzwilliam, United States Attorney, John C. Keeney, Acting Assistant Attorney General, Mary Lee Warren, Chief, and Julie J. Shemitz, Attorney, Criminal Division, Narcotic and Dangerous Drug Section, on brief for appellee No. 93-1517.
 D. Puerto Rico
 AFFIRMED
 Before Breyer, Chief Judge, Selya and Cyr, Circuit Judges.
 Per Curiam.
 
 
 1
 Appellants, Mario Torres-Melendez and Jose Bonilla-Martinez, were charged with having been involved in a large scale drug conspiracy which ran from 1985 until appellants and others were indicted in 1990. Torres-Melendez pled guilty to conspiracy to import cocaine in violation of 21 U.S.C. § 846 and was sentenced to a term of imprisonment of 292 months. Bonilla-Martinez pled guilty to one count of conspiracy to possess with intent to distribute cocaine, marijuana and heroin, in violation of 21 U.S.C. §§ 841(a) and 846. He was sentenced to 87 months imprisonment, the sentence to be served concurrently with a sentence of 264 months imprisonment imposed upon him in another case. Both appellants appeal their sentences.
 
 Bonilla-Martinez
 
 2
 Bonilla-Martinez' sole argument on appeal is that the sentencing court erred when it enhanced his criminal history 2 points, pursuant to U.S.S.G. § 4A1.1(b), because of a prior sentence of imprisonment of at least sixty days. BonillaMartinez contends that since the criminal conduct for which he was sentenced in that prior case occurred after the criminal conduct for which he was indicted in the instant case, the sentence in the first case is not a "prior sentence" under the guidelines.
 
 
 3
 According to the application notes, a "prior sentence" under § 4A1.1 "means a sentence imposed prior to sentencing on the instant offense, other than a sentence for conduct that is part of the instant offense. See § 4A1.2(a). A sentence imposed after the defendant's commencement of the instant offense, but prior to sentencing on the instant offense, is a prior sentence if it was for conduct other than conduct that was part of the instant offense." U.S.S.G. § 4A1.2, comment. (n.1) (emphasis added); see U.S.S.G. § 4A1.1, comment. (n.1) (term "prior sentence" defined at § 4A1.2(a)). Appellant does not contend that the conduct in the prior case was part of the instant offense.
 
 
 4
 Appellant's contention that his prior sentence for conduct unrelated to the present offense should not be counted simply because that offense occurred after the present offense is belied by the plain language of the application notes and has been rejected by every circuit court which has considered this issue. See, e.g., United States v. Tabaka, 982 F.2d 100, 101-02 (3d Cir. 1992); United States v. Beddow, 957 F.2d 1330, 1337 (6th Cir. 1992); United States v. Hoy, 932 F.2d 1343, 1345 (9th Cir. 1991); United States v. Walker, 912 F.2d 1365 (11th Cir. 1990), cert. denied, 498 U.S. 1103 (1991); United States v. Smith, 900 F.2d 1442, 1446-47 (10th Cir. 1990). We too find no merit in appellant's contention.
 
 Torres-Melendez
 
 5
 Torres-Melendez raises three claims. First, he contends that the court erred when it increased his offense level, pursuant to U.S.S.G. § 3B1.3, because he "used a special skill, in a manner that significantly facilitated the commission ... of the offense." Second, he asserts that the court erred in its determination of his criminal history category. Third, he contends that his counsel at sentencing was constitutionally ineffective. Since neither of the first two issues were raised below, we review them only for "plain error." "Under this standard, we review only 'blockbusters: those errors so shocking that they seriously affect the fundamental fairness and basic integrity of the proceedings conducted below.' " United States v. Olivo-Infante, 938 F.2d 1406, 1412 (1st Cir. 1991) (quoting United States v. Griffin, 818 F.2d 97, 100 (1st Cir.), cert. denied 484 U.S. 844 (1987)).
 
 
 6
 The presentence report, adopted by the sentencing court, found that Torres-Melendez had "utilized his knowledge and expertise in welding to facilitate the smuggling of controlled substances into U.S. Territory." The report indicates that he had welded compartments onto industrial lawn mowers into which cocaine was secreted, that he had modified an automobile gas tank to hold cocaine, that he had opened and then resealed the cylinder of a steamroller into which cocaine was packed, and that he had constructed two steel tanks used to transport molasses which concealed cocaine. These acts clearly facilitated the commission of the offense for which appellant was sentenced. Appellant contends, however, that welding is not a "special skill" as contemplated by the guidelines.
 
 
 7
 The guidelines explain a "special skill" as "a skill not possessed by members of the general public and usually requiring substantial education, training or licensing. Examples would include pilots, lawyers, doctors, accountants, chemists, and demolition experts." U.S.S.G. § 3B1.3, comment. (n.1); see also United States v. Connell, 960 F.2d 191, 197-98 (1st Cir. 1992). Welding of the sort performed by appellant during the course of the conspiracy is not a skill "possessed by members of the general public." Appellant contends, however, that welding is not a skill requiring "substantial education, training or licensing." Even if we were to agree, the guidelines indicate that these characteristics are not always required for a finding that a defendant possesses a "special skill." See United States v. Spencer, Nos. 93-1041/1042, 1993 U.S. App. LEXIS 21651, at (2d Cir. Aug. 25, 1993) ("Because the comment adds the word 'usually,' we find no basis for limiting the increase to only those with formal educations or professional skills."); United States v. Hummer, 916 F.2d 186, 191 (4th Cir. 1990), cert. denied, 111 S.Ct. 1608 (1991) (use of term " 'usually' ... implies that substantial training is not a mandatory prerequisite to making a special skills adjustment"). Hence, we cannot say, as a matter of law, that welding is not a "special skill" as contemplated by section 3B1.3.
 
 
 8
 As far as the application of the guideline to appellant is concerned, we do not ordinarily consider a challenge to the application of a particular guideline when that challenge has not been raised in the court below. See United States v. Pilgrim Market Corp., 944 F.2d 14, 21 (1st Cir. 1991). The rationale behind this rule is, in part, that, absent objection, "the district court had a right to believe that defendant agreed that the facts [in the presentence report] were true and accurate." Id., (quoting United States v. Fox 889 F.2d 357, 359 (1st Cir. 1989). Further, the determination of whether appellant's particular skill justifies an increase under section 3B1.3 is "likely to involve drawing sophisticated inferences from a web of interconnecting facts." Connell, 960 F.2d at 198. "[W]hen a defendant fails to raise the issue below, we have no factual record by which to review the application of the guidelines."[1] United States v. Saucedo, 950 F.2d 1508, 1518 (10th Cir. 1991). In these circumstances, we find no plain error in the court's increase of appellant's offense level for possession of a "special skill." Cf. United States v. Lopez, 923 F.2d 47, 50 (5th Cir.), cert. denied, 111
 
 
 9
 S.Ct. 2032 (1991) ("[q]uestions of fact capable of resolution by the district court upon proper objection at sentencing can never constitute plain error"); Saucedo, 950 F.2d at 1508 (same).
 
 
 10
 Torres-Melendez also contends that the court erred in assigning him a criminal history category of III. Category III includes defendants who have accumulated between 4 and 6 criminal history points. Appellant concedes that 2 criminal history points were properly assigned to him pursuant to U.S.S.G. § 4A1.1(d) because he committed the instant offense while on probation. However, he asserts that the assignment of 3 criminal points pursuant to § 4A1.1(a) was in error. He claims that only 1 point should have been added and therefore that his criminal history category is properly II.
 
 
 11
 According to his presentence report, appellant was sentenced to a three year term of imprisonment for involuntary manslaughter/vehicular homicide in June 1983. After three months, this sentence was modified to probation. The proper number of points to be added to appellant's criminal history category depends on whether appellant was incarcerated between June and September 1983, a fact not made clear by the presentence report. If appellant were incarcerated, 2 points should have been added to his criminal history category. See U.S.S.G. § 4A1.1(b) ("[a]dd 2 points for each prior sentence of imprisonment of at least sixty days"); id. § 4A1.2, comment. n.
 
 
 12
 2 ("[t]o qualify as a sentence of imprisonment, the defendant must have actually served a period of imprisonment on such sentence"). If he were not, however, his criminal history category should have been increased only 1 point. See id. § 4A1.1(c) ("[a]dd 1 point for each prior sentence not counted in (a) or (b)"). In any event, the government concedes that the 3 points assigned by the presentence report was in error.[2] However, it contends that the error was harmless because 2 points should have been added to appellant's criminal history and this change would not affect his criminal history category.
 
 
 13
 Once again, the failure to raise the objection below is fatal to appellant's claim. Absent an adequately developed factual record, we are without any means of determining whether the court's admitted error in assigning appellant 3 criminal history points was anything more than harmless error. Thus, we are unable to say that assigning appellant a criminal history category of III was plain error.[3] See supra.
 
 
 14
 Finally, Torres-Melendez asserts that he received ineffective assistance of counsel at sentencing. Since this claim was not raised below, this court has neither a developed factual record sufficient to sustain appellate review nor the evaluation of the sentencing court as to the merits of the claim. In such circumstances, this court has repeatedly indicated that the proper vehicle for raising a claim of ineffective counsel is through the filing of a petition under 28 U.S.C. § 2255. See United States v. Sanchez, 917 F.2d 607, 612 (1st Cir. 1990), cert. denied 111 S.Ct. 1625 (1991) (citing cases).
 
 
 15
 Affirmed.
 
 
 
 [1]
 The factual record we do have indicates that, although appellant had little formal education, "through work experience he became an ... excellent welder."
 
 
 [2]
 The record contains two different copies of the presentence report, one of which assigns 3 criminal history points for the 1983 sentence, the other 2. Both appellant and the government assume that the court assigned 3 criminal history points. Neither makes any mention of the other version of the presentence report. For purposes of review, we too assume that the court added 3 points
 
 
 [3]
 Appellant's sentence of 292 months falls within the range of 262-327 months to which he would be subject if his criminal history category were II. Appellant has presented no evidence, and the record reveals none, that the court would have imposed a lesser sentence if the range were different