**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 3 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

EULALIO BENAVIDES,

    Defendant - Appellant.

No. 98-2184

(D. New Mexico)

(D.C. No. CR-96-419-JC)

**ORDER AND JUDGMENT**  *

Before **ANDERSON** , **KELLY** , and **BRISCOE** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal.   See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is

therefore ordered submitted without oral argument.

Eulalio Benavides pled guilty to (1) conspiring to possess, with intent to

distribute, cocaine; and (2) distributing cocaine.  At his plea hearing, however,

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Benavides reserved the right to contest, at sentencing, any responsibility for trafficking more than 98.5 grams of cocaine. Following his guilty plea, the district court held a sentencing hearing to determine the amount of cocaine Benavides and his co-conspirators had possessed and/or distributed. At that hearing, the district court determined that Benavides was responsible for trafficking at least 500 grams of cocaine. Based on this determination, the district court sentenced Benavides to 120 months' imprisonment—the statutory minimum—on each count, with the sentences to run concurrently. Benavides now appeals from the imposition of this sentence, arguing that the district court erred in determining that Benavides was responsible for trafficking at least 500 grams of cocaine. For the reasons discussed below, we affirm the judgment and sentence of the district court.

## BACKGROUND

On November 7, 1996, a federal grand jury returned a ten-count indictment against Eulalio Benavides ("Benavides") and his alleged co-conspirators—his uncle Rudolfo Benavides ("Rudolfo"), Christopher Rawls, and Jamie Michelle Ireland. Benavides was mentioned in two of the ten counts. Count I charged all four alleged conspirators with conspiring to possess, with intent to distribute, more than 500 grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1),

(b)(1)(B), and 846. Count IV charged Benavides and his uncle with distributing less than 500 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). On that same day, a warrant was issued for Benavides' arrest.

Approximately a year later, in November 1997, Benavides was arrested and arraigned before a United States magistrate judge, where he entered an initial plea of not guilty. On February 6, 1998, the government filed an enhancement information, pursuant to 21 U.S.C. § 851, informing the court that Benavides had a prior state felony conviction for trafficking in cocaine. This prior conviction would have the effect of increasing Benavides' sentences, if Benavides were to be convicted of the pending charges against him. For instance, the charge in Count IV—distributing less than 500 grams of cocaine—carries no minimum sentence and a maximum of 20 years' imprisonment, but for offenders with a prior felony drug conviction, the sentence is increased to a prison term of "not more than 30 years." 21 U.S.C. § 841(b)(1)(C). And the charge in Count I—conspiracy to possess, with intent to distribute, more than 500 grams of cocaine—increases, with a prior felony drug conviction, from "not less than 5 years and not more than 40 years" to "not . . . less than 10 years and not more than life imprisonment." 21 U.S.C. § 841(b)(1)(B). By introducing the prior felony drug conviction, the government hoped to take advantage of the 10-year statutory minimum sentence prescribed in 21 U.S.C. § 841(b)(1)(B).

To do so, however, the government would have to show that Benavides was responsible for the possession and/or distribution of more than 500 grams of cocaine. See 21 U.S.C. § 841(b)(1)(B). From the outset, Benavides has denied responsibility for more than five ounces—approximately 125 grams—of cocaine. [1]

On February 9, 1998, Benavides agreed to plead guilty, without a written plea agreement or any concessions from the government, to Count IV in its entirety, and to all of Count I except the drug quantity. That is, Benavides pled guilty to (1) distributing less than 500 grams of cocaine, and (2) conspiring with Rudolfo, Rawls, and Ireland, to possess, with intent to distribute, a disputed amount of cocaine. At his plea hearing, Benavides expressly reserved the right to contest, at

---

[1] One ounce is equal to 28.35 grams. See USSG § 2D1.1, comment. (n.10) (measurement conversion table). However, throughout this case, the parties have referred to one ounce as equal to 25 grams. See III R. at 14 (defense counsel referring to 25 grams as "a Mexican ounce," and the prosecutor agreeing to use 25 grams as "the conservative number").

At his plea hearing and in his initial objections to the presentence report, Benavides insisted that he was responsible for only four ounces—approximately 98.5 grams—of cocaine. See II Supp. R. at 153; II R. at 47. However, on appeal, Benavides concedes that he is responsible for selling "one ounce of cocaine on June 11, 1996, and four ounces on June 13, 1996 for a total of 125 grams." Appellant's Br. at 7.

the sentencing hearing, the amount of drugs for which he was responsible.[2] The district court accepted Benavides' plea, and scheduled a sentencing hearing.

At the sentencing hearing, the government presented two witnesses: Special Agent Dennis Kintigh of the Federal Bureau of Investigation (FBI); and Jamie Michelle Ireland, one of Benavides' co-conspirators, who had entered into a plea agreement with the government. Kintigh confirmed that Benavides was involved in selling five ounces of cocaine to undercover agents on June 11 and 13, 1996. Kintigh also stated, however, that at the June 13th cocaine transaction and during a telephone call the next day, Benavides and the undercover agent discussed another deal for 500 grams of cocaine, to be consummated on June 14th. At a meeting on June 14th, Benavides stated that "he had the merchandise," and invited the undercover agent to get into his car to finish the deal. III R. at 16. The agent, fearing for his safety, refused to get into Benavides' car, and the deal fell through.

In addition, Kintigh stated that in late June 1996, Benavides was arrested on domestic disturbance charges, and, while incarcerated, he told local

---

[2]We have approved of similar plea agreements. See United States v. Silvers, 84 F.3d 1317, 1320 (10th Cir. 1996). We have stated that because drug quantity is not a substantive element of a drug offense, "a defendant is not entitled to have the issue decided by a jury," and "the government is required only to prove the quantity of drugs attributable to the defendant by a preponderance of the evidence at sentencing," rather than beyond a reasonable doubt, "in order to trigger the mandatory minimum sentences prescribed in 21 U.S.C. § 841(b)." Id.

authorities that he and his uncle, together, "dealt on average . . . 250 grams [of cocaine] per week." III R. at 20. These approximate amounts were confirmed by Rudolfo, who, after his arrest, told the FBI that he and Benavides had "provided [one specific customer] Mark Sanders [with] an estimated two kilograms of cocaine during their business together." III. R. at 21.

Kintigh also testified that the other participants in the conspiracy had been apprehended with narcotics in their possession. In March 1996, Rawls was stopped at a Border Patrol checkpoint, and officers discovered 225 grams of cocaine in his possession. Rudolfo later told authorities that this particular shipment of cocaine "was intended for [Benavides] in Hobbs, New Mexico." III R. at 22. And in late June and July 1996, Rudolfo, Ireland, or both were discovered on several occasions in the possession of drugs. On June 26th, Rudolfo sold 112 grams of cocaine to an undercover agent; on June 28th, Rudolfo and Ireland sold 84 grams of cocaine to an agent; and on July 30th, Rudolfo sold 42 grams of cocaine and 168 grams of heroin to an agent. Benavides was not personally involved in the March, late June, or July transactions.

The government's next witness was Ireland, who stated that she had begun her association with Rudolfo as a maid and a chauffeur, but was soon asked to function as a sort of bookkeeper for the conspirators. She stated that she kept

careful records of how much cocaine was bought, used, and sold by the group, including Benavides. She stated that when she started working with Rudolfo in March 1996, Benavides was already part of the group. She described Benavides as Rudolfo's "middle man" and his "connection to most of the [customers] in Hobbs[, New Mexico]." III R. at 39. When Rudolfo would travel to Hobbs to sell drugs, Benavides would either place the customers, some of whom he had recruited, in contact with Rudolfo, or he would take some of Rudolfo's cocaine and sell it directly to the customers himself. She stated that a "conservative estimate" of the amount of drugs Rudolfo brought to Hobbs for distribution was "about three ounces [or 75 grams] a week" over a twelve-week period. III R. at 45.

Benavides did not call any witnesses of his own at the sentencing hearing, but his attorney did cross-examine both Kintigh and Ireland, attempting to impugn the credibility of those witnesses. At the conclusion of the evidence, the district court "conclude[d] that the evidence has established that [Benavides] was involved in a conspiracy that resulted in the distribution of at least 500 grams of cocaine and that there's substantial evidence to establish that that is the amount." III R. at 61. Therefore, based on this finding, the district court was required to apply the statutory minimum sentence prescribed by 21 U.S.C. § 841(b)(1)(B).

The district court found that Benavides' total offense level was 28 under the Sentencing Guidelines, and that his criminal history category was IV.[3] Under these circumstances, the applicable guideline range is 110-137 months, but the statutory minimum sentence, from 21 U.S.C. § 841(b)(1)(B), alters the allowable range to 120-137 months. The district court sentenced Benavides to 120 months' imprisonment on each count, and to five years' supervised release on Count I and three years' supervised release on Count IV, with the sentences to run concurrently.

---

[3]In his appellate brief, Benavides appears to challenge the computation of his criminal history. However, as Benavides points out in his brief, because he did not raise this issue before the district court, we would review it only for plain error. See United States v. Alessandroni, 982 F.2d 419, 420 (10th Cir. 1992). And, factual questions regarding sentencing which are not raised below, such as whether the district court counted the same offense twice in calculating criminal history, are not appropriate for plain error review, because "we have no factual record by which to review the application of the guidelines." United States v. Saucedo, 950 F.2d 1508, 1518 (10th Cir. 1991). Thus, we have held that a defendant's failure to raise a factual sentencing issue below constitutes waiver of that issue for the purposes of direct appeal. See United States v. Deninno, 29 F.3d 572, 580 (10th Cir. 1994); Saucedo, 950 F.2d at 1518.

In any event, the issue is mooted by our resolution of Benavides' challenge to the drug quantity. If he was involved in trafficking more than 500 grams of cocaine, and if he has a prior felony drug conviction, he must serve a minimum of 10 years in prison, see 21 U.S.C. § 841(b)(1)(B), regardless of whether the remainder of his criminal history points were correctly tallied.

Benavides now appeals from the imposition of this sentence, arguing that the district court erroneously concluded that he was responsible for the possession and/or distribution of more than 500 grams of cocaine.

**DISCUSSION**

In a case such as this one, where the total amount of drugs the defendant is charged with distributing or possessing was not seized by the government, the sentencing court must estimate the amount of drugs involved. This estimate may be "based on a variety of circumstances, so long as they have 'some basis of support in the facts of the particular case'" and "possess a 'minimum indicia of trustworthiness.'" United States v. Nieto, 60 F.3d 1464, 1469 (10th Cir. 1995) (quoting United States v. Garcia, 994 F.2d 1499, 1508 (10th Cir. 1993)). This estimate is a finding of fact, which, as Benavides correctly points out, we review only for clear error. See United States v. Garcia, 78 F.3d 1457, 1462 (10th Cir. 1996) (stating that "[w]e review the factual findings of a district court relating to sentencing issues for clear error"). A factual finding is not clearly erroneous "unless the court's finding was without factual support in the record, or if after reviewing all the evidence we are left with the definite and firm conviction that a mistake has been made." United States v. Smith, 133 F.3d 737, 744 (10th Cir. 1997) (citation and quotation marks omitted).

In this case, the district court's factual finding that Benavides, or the conspiracy between Benavides, Rudolfo, Rawls, and Ireland during the months Benavides was a part of the conspiracy, was responsible for the possession and/or distribution of more than 500 grams of cocaine was not clearly erroneous. This finding was amply supported by evidence presented at the sentencing hearing, and, in the end, we are not left with the impression that a mistake has been made here. For instance, the following evidence was relied on by the district court in making its finding that more than 500 grams of cocaine were involved: (1) Benavides' admission that he was involved in the sale of 125 grams of cocaine; (2) Kintigh's testimony that Benavides entered into a deal with an undercover agent for the sale of 500 grams of cocaine, although the deal fell through at the last minute; (3) Kintigh's testimony that Benavides told local drug officers that he and Rudolfo distributed approximately 250 grams of cocaine per week; (4) Kintigh's testimony that Rudolfo, in discussions with authorities following his arrest, stated that one of their best customers in Hobbs, New Mexico, purchased approximately 2,000 grams of cocaine from him and Benavides; (5) Ireland's testimony that Rudolfo and Benavides distributed, in Hobbs, approximately 75 grams per week over a twelve-week period, for a total of 900 grams; (6) Kintigh's testimony that other members of the conspiracy were caught with the equivalent of over 1,000 grams of cocaine at various times, including Rawls' 225

grams which Rudolfo stated were expressly earmarked for Benavides to distribute in Hobbs.

Even if we were to discount one or even several of these episodes, there would still be sufficient evidence for the district court to have concluded that Benavides was involved in trafficking more than 500 grams of cocaine. Benavides, however, argues that the evidence presented at the sentencing hearing, especially Ireland's testimony, was not reliable. In support of this argument, he cites United States v. Richards, 27 F.3d 465 (10th Cir. 1994), a case in which we held that a trial court's drug quantity determination, based solely on the testimony of one witness who offered contradictory testimony, was clearly erroneous and without support in the record. That case is easily distinguishable from the case at hand. Here, the district court's drug quantity determination was supported by two witnesses, both of whom offered coherent and uncontradictory testimony. This case differs from Richards in that Ireland's testimony was not contradictory and was therefore stronger than the testimony discounted in Richards, and in that here, even if we were to totally discount Ireland's testimony, there is still sufficient evidence, introduced through the testimony of Agent Kintigh, to support the district court's drug quantity determination. See Nieto, 60 F.3d at 1469-70 (holding that a district court's drug quantity determination, which was based solely only the uncorroborated but credible

testimony of a single witness, was supported by the evidence and therefore not clearly erroneous).

In short, we think that there was sufficient evidence introduced at the sentencing hearing to support the district court's finding that Benavides was involved in trafficking more than 500 grams of cocaine, and that this evidence possesses at least minimal indicia of trustworthiness. Accordingly, we hold that the district court's finding was not clearly erroneous.

The judgment and sentence of the district court are AFFIRMED.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge