UNITED STATES of America,
Plaintiff–Appellee,

v.

Cedric RILES, Defendant–Appellant.

No. 90–4046.

United States Court of Appeals,
Tenth Circuit.

March 14, 1991.

340

Heather Cooke, Asst. U.S. Atty. (Dee Benson, U.S. Atty., with her on the briefs), Salt Lake City, Utah, for plaintiff-appellee.

Jerome H. Mooney, III, Salt Lake City, Utah, for defendant-appellant.

Before TACHA and McWILLIAMS, Circuit Judges, and NOTTINGHAM, District Judge.*

NOTTINGHAM, District Judge.

Cedric Riles pled guilty to one charge involving distribution of cocaine on the real property of a public university, in violation of 21 U.S.C. § 845a (1988), and another charge involving distribution of cocaine base ("crack" cocaine), in violation of 21 U.S.C. § 841(a)(1) (1988). Since the offenses were committed in April and June of 1989, the district court applied the federal sentencing guidelines in effect on those dates and sentenced Riles to 51 months in prison. *See* United States Sentencing Commission, *Guidelines Manual* (1988). Pursuant to 18 U.S.C. § 3742(a)(2) (1988), Riles now appeals this sentence, arguing that it was imposed as a result of an incorrect application of the sentencing guidelines.

Riles argues that the district court misapplied the sentencing guidelines in two ways. First, he claims that he was not predisposed to distribute "crack" cocaine, that he did so only at the request of government agents, and that the government's conduct constitutes a form of entrapment which the court should have considered in imposing sentence. Second, he urges that he was a "minimal" or "minor" participant in the distribution of "crack" cocaine and that the district court should thus have made a downward adjustment in determining the appropriate offense level. We reject both contentions and affirm the district court's sentence.

## BACKGROUND

Riles, a student and football player at the University of Utah, was accused in every count of a nine-count indictment. The first count charged that he conspired with three other people to distribute cocaine, in violation of 21 U.S.C. § 846 (1988). The next six counts charged Riles and the co-conspirators with specific distributions of cocaine on real property comprising a

public university, in violation of 21 U.S.C. § 845a (1988). The total amount of cocaine delivered to undercover agents on these six occasions was 67.4 grams. The last two counts charged Riles, alone, with distribution of cocaine base ("crack" cocaine), in violation of 21 U.S.C. § 841(a)(1) (1988). The total amount of cocaine base delivered to undercover agents on these two occasions was 16.6 grams.

As noted, Riles pled guilty to one of the counts charging distribution of cocaine on a university campus and one of the counts charging distribution of "crack" cocaine. The district court, accepting the findings and calculations contained in the presentence investigation report, used a four-step process to determine the base offense level. First, it decided that the events charged in all nine counts of the indictment constituted "relevant conduct," since (1) multiple-count drug offenses would be grouped together under U.S.S.G. § 3D1.2(d) (1988) and (2) the offenses were "part of the same course of conduct." U.S.S.G. § 1B1.3(a)(2) (1988). Second, following U.S.S.G. § 2D1.3(a)(2)(B) (1988) (requiring court to double the drug amount involved, where distribution occurs on or near a college campus), it doubled the 67.4 grams which Riles delivered to undercover agents at the University of Utah. Third, using the drug equivalency tables found at U.S.S.G. § 2D1.1 (1988) (1 gram of cocaine base equals 100 grams of cocaine), it found that the 16.6 grams of "crack" which Riles delivered to undercover agents was equal to 1,660 grams of "ordinary" cocaine. Fourth, it added the amounts calculated in steps two and three to decide that the amount of cocaine to be used in calculating the base offense level was 1,794.8 grams. It therefore concluded that the base offense level was 26. U.S.S.G. § 2D1.1(a)(3) (1988). Although the court made a two-point downward adjustment for Riles' acceptance of responsibility, it found that he was not entitled to a downward adjustment for a mitigating role in the offense. The court also found that he was not entitled to

---

* Honorable Edward W. Nottingham, United States District Judge for the District of Colora-

do, sitting by designation.

a downward adjustment or other favorable treatment because of his allegation that he was entrapped into selling "crack" cocaine.

## ANALYSIS

### 1. *entrapment*

■ While Riles concedes that he was involved in the distribution of cocaine before he was even contacted by undercover agents, he maintains that he was not predisposed to distribute "crack." He delivered "crack" to the undercover agents only after their repeated requests that he do so. He thus concludes that he was entrapped and asserts error in the district court's inclusion of the "crack" in determining his base offense level. Because Riles' contention presents the purely legal question whether a sentencing court should even consider this form of entrapment defense in imposing sentence, we review the district court's determination *de novo.* *See United States v. Roberts,* 898 F.2d 1465, 1468–69 (10th Cir.1990).

■ Defendant, having knowingly and voluntarily pled guilty to the charge of distributing "crack" cocaine, could not argue at sentencing that he was entrapped into the distribution or that he lacked the predisposition to distribute "crack." Entrapment is an affirmative defense, *e.g. Mathews v. United States,* 485 U.S. 58, 62, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (1988); *United States v. Fadel,* 844 F.2d 1425, 1429 (10th Cir.1988), which bears on the question whether a defendant is guilty of the crime charged. *United States v. Yater,* 756 F.2d 1058, 1062 (5th Cir.1985). In most situations, this defense can only be resolved by trial of the general issue. *Fadel,* 844 F.2d at 1430–31; *United States v. Graves,* 556 F.2d 1319, 1321 (5th Cir.1977), *cert. denied,* 435 U.S. 923, 98 S.Ct. 1485, 55 L.Ed.2d 516 (1978). Once a defendant has plead guilty, "there will not be a further trial of any kind, so that by pleading guilty ... the defendant waives the right to a trial." Fed.R.Crim.P. 11(c)(4). By waiving the right to trial, a defendant waives non-jurisdictional defenses, including entrapment, a non-jurisdictional defense on the merits. *Eaton v. United States,* 458 F.2d 704, 707 (7th Cir.), *cert. denied,* 409 U.S. 880, 93 S.Ct. 208, 34 L.Ed.2d 135 (1972);

*Yater,* 756 F.2d at 1063. He likewise admits that he was predisposed to commit the offense, since predisposition is "the crux of the entrapment defense." *Fadel,* 844 F.2d at 1429.

Riles attempts to avoid this conclusion by the strained argument that the sentencing guidelines' definition of conduct relevant to determining the guideline range permits him to litigate the question of entrapment at sentencing. His specific contention is that he should not be held "otherwise accountable," U.S.S.G. § 1B1.3(a)(1) (1988), for conduct in which he would not have engaged, absent government coercion. An examination of the "relevant conduct" guideline, however, reveals that Riles has taken the "otherwise accountable" language out of context and that the guideline as a whole does not permit him to raise the issue of entrapment at sentencing.

■ The "relevant conduct" guideline, U.S.S.G. § 1B1.3(a)(1) (1988) provides that the base offense level is to be determined on the basis of, *inter alia,* the following:

all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense.

Here, the distribution of "crack" was an "act ... committed or aided and abetted by the defendant." Indeed, it was an "offense of conviction." All of this was admitted by Riles' plea of guilty. Contrary to his contention, the "otherwise accountable" language permits a court to consider acts *in addition* to those which a defendant committed; it is not a limitation which permits him to raise at sentencing the question of whether he is "otherwise accountable" for the offense which he committed. The district court thus properly applied the guideline by refusing to consider the proffered issue of entrapment.

### 2. *minimal or minor participation*

■ Riles contends that he was entitled to a downward adjustment for his "mini-

mal" or "minor" participation (he does not specify which) in the distribution of "crack." The contention raises a threshold issue concerning the method to be followed by a sentencing court in determining a base offense level and making adjustments to that offense level. Since this issue turns on a legal interpretation of the relevant guidelines, we review it *de novo*. *Roberts*, 898 F.2d at 1469.

■ As noted, the district court determined the base offense level by aggregating all of the drugs—cocaine and "crack"—which Riles distributed. It then decided that he was entitled to no adjustment for a mitigating "minimal" or "minor" role in the offense, basing its decision on an analysis of his role in distributing all of the drugs. Riles takes issue with this approach. He seems to concede, as he must, that drug offenses which are part of the same course of conduct are, in most cases, properly aggregated in determining a base offense level. *United States v. Rutter*, 897 F.2d 1558, 1562 (10th Cir.1990) (interpreting U.S.S.G. §§ 1B1.3[a][2], 3D1.2[d] [1988]). He nonetheless argues that, in making its "role in the offense" adjustments here, the district court should have tentatively calculated a separate base offense level for each offense of conviction and then made separate adjustments to each level. For the "crack" cocaine alone the base offense level would have been 26, and Riles' proposed adjustments for minimal/minor participation in the "crack" offense (combined with the undisputed adjustment for acceptance of responsibility) would result in an adjusted offense level of 20 or 22. Because of the guidelines' serious treatment of "crack" (one gram of "crack" equals 100 grams of cocaine), aggregation of the cocaine (134.8 grams) and the "crack" (equivalent to 1,660 grams of cocaine) does not change the base offense level of 26. Thus, Riles argues, the court should have used a base offense level of 26 and then made the indicated adjustment for his asserted minimal or minor role in the "crack" offense.

■ We reject Riles' argument and conclude that the district court's approach was the correct interpretation of the guidelines. Under the guidelines, the notion of "relevant conduct" governs not only the base offense level, but also the "adjustments in Chapter 3." U.S.S.G. § 1B1.3(a) (1988). Since the "role in the offense" adjustments are among those included in chapter three of the guidelines, a sentencing court must examine all relevant conduct in determining whether to make such adjustments. In determining "relevant conduct," drug offenses are included in the category of offenses which "involve a pattern of misconduct that cannot readily be broken into discrete, identifiable units that are meaningful for purposes of sentencing." U.S.S.G. § 1B1.3, comment (backg'd) (1988). The measure of harm, rather, turns primarily on the amount of drugs involved, and "relevant conduct" thus includes all drugs distributed as part of the "same course of conduct." U.S.S.G. § 1B1.3(a)(2) (1988). Similarly, in deciding whether a defendant played a minimal or minor role in accomplishing the harm involved in a drug offense, a sentencing court properly considers his role in all distributions which are part of the same pattern of conduct. Riles' proposed approach, in contrast, is inconsistent with the guidelines, because it assumes that his role in these drug offenses can somehow be broken into "discrete, identifiable units" (the cocaine offense and the "crack" offense), a notion rejected by the guidelines.

■ The remaining question is whether the district court, analyzing Riles' role in all of the drug transactions here, properly determined that he did not play a minimal or minor role. Since this issue requires an analysis of the facts, we "give due deference to the district court's application of the guidelines to the facts," 18 U.S.C. 3742(e) (1988), and review the determination to decide whether it is "clearly erroneous." *United States v. Roberts*, 898 F.2d at 1468–69. We conclude that the district court's determination was correct.

A "minimal participant" is one who is "plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2(a), comment (n. 1) (1988). A "minor participant" is "any participant who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2(b), comment (n. 3) (1988). Here, the evidence

before the district court showed Riles to be a principal or an aider and abettor in all eight deliveries of cocaine to undercover agents; indeed, he alone was involved in the "crack" distributions. His co-conspirators, the other "participants" in this concerted activity, were involved in three distributions, at most. He was neither the "least culpable" nor "less culpable than most other participants," and the district court's refusal to award him an adjustment for a minimal or minor role was not clearly erroneous.

For the reasons stated, the district court's sentence is

AFFIRMED.