**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Marion George GINES, Defendant–
Appellant.**

No. 91–4046.

United States Court of Appeals,
Tenth Circuit.

May 13, 1992.

Dee Benson, U.S. Atty., and Wayne T. Dance, Asst. U.S. Atty., Salt Lake City, Utah, for plaintiff-appellee.

Benjamin Knowlton, Salt Lake City, Utah, for defendant-appellant.

Before SEYMOUR and TACHA, Circuit Judges, and BRIMMER,* District Judge.

BRIMMER, Chief District Judge.

This direct appeal seeks review of a judgment in a criminal case pursuant to Rule 4(b) Rules of Appellate Procedure, and 18 U.S.C. § 3742, wherein appellant entered a plea of guilty to violations of 21 U.S.C. §§ 841(a)(1) and 845(a) and 18 U.S.C. § 2 (knowing and intentional manufacture of 100 grams or more of methamphetamine, a Schedule II controlled substance, within 1,000 feet of a public school) in the United States District Court for the State of Utah before the Honorable J. Thomas Greene. Appellant was sentenced to the custody of the Bureau of Prisons for a period of two hundred thirty-five (235) months, followed by supervised release of 10 years. Appellant is currently in custody and serving his sentence.

This Court has jurisdiction over appeals from final judgments of the district court under 28 U.S.C. § 1291. We affirm the district court's judgment.

## Background

Pursuant to a state of Utah search warrant, Appellant Marion George Gines, a resident of West Valley City, Utah, was arrested on July 6, 1990 at his residence by officers of the Salt Lake County Sheriff's Department. Appellant was transported to the Salt Lake County Jail and held without bail throughout the duration of this matter. The case was investigated by the Salt Lake County Sheriff's Department who referred it to the United States Attorney. Along with co-defendants Mary Tarlip and Frank Fior, appellant was subsequently charged with crimes relating to the manufacture of methamphetamine.

On July 10, 1990, a complaint was filed against the above individuals in the United States District Court, District of Utah and a warrant for arrest was issued by a United States Magistrate. On July 18, 1990, a grand jury returned a six count indictment against appellant and his co-defendants. A superseding indictment filed on October 3, 1990 added Diedre E. Kay, Miles G. Kay, and Charles Brent Fogel as co-defendants. Appellant filed a Motion to Dismiss on November 28, 1990, alleging violation of the Speedy Trial Act. That motion was denied on December 12, 1990.

Before the jury trial set for January 7, 1991, all charges were dismissed against co-defendant Frank Fior. Motions of substantial assistance were offered to the other co-defendants in return for cooperation. During the week prior to January 7, 1991, all other co-defendants reached plea bargain agreements with the government, and arranged to plead guilty. On January 5, 1991, appellant agreed to plead guilty to Count IIA of the superseding indictment charging him with manufacturing methamphetamine, which plea was conditioned upon dismissal of all other charges and certain other provisos.

The conditions agreed to by Gines included the following terms:

(c) I understand and agree as part of this plea agreement that the government's evidence establishes that the total amount of methamphetamine (by weight in both dry and liquid form) manufactured and present in my house on July 6, 1990, was 5,969.1 grams. I further understand and agree that this will result in a base offense level of 34 (3–10 kilograms); § 2D1.1 of Sentencing Guidelines).

---

* Honorable Clarence A. Brimmer, Chief District Judge, United States District Court for the District of Wyoming, sitting by designation.

(d) I also understand and agree as part of this plea agreement that my house where the methamphetamine was located was within 1,000 feet of a school, which will result in an upward adjustment of the offense level by 2 levels pursuant to § 2D1.2(a)(1).

(e) I also understand and agree as part of this plea agreement that various firearms, some fully loaded, were located in my house in close proximity to the methamphetamine, which may result in an upward adjustment of the offense by 2 levels pursuant to § 2D1.1(b)(1).

(f) I also understand and agree as part of this plea agreement that the government's evidence in this case supports an upward adjustment of the offense level based on my aggravating role in the offense pursuant to § 3B1.1. I further understand that the government will also seek only the 2 level adjustment under § 3B1.1(c) and not a higher level adjustment under subparagraphs (a) or (b).

(g) I also understand and agree as part of this plea agreement that the government will agree to the court adjusting the offense level downward by 2 levels based on my acceptance of responsibility and pursuant to § 3E1.1, provided that I fully and truthfully cooperate with the Probation Department in its presentence investigation.

(h) I understand that as part of this plea agreement the government will recommend to the court at sentencing that I be sentenced at the low end of the applicable final sentencing guidelines range.

(Aplt's App. at 33.)

Upon entering his guilty plea, appellant stated that he was acting freely and voluntarily and acknowledged his agreement with the six stipulations. He expressed understanding that by pleading guilty he waived his right to a trial. The government, in its summary of the case against Gines to establish a factual basis for the plea, included evidence of the 5,969.1 grams of methamphetamine found at Gines' residence, the presence of several firearms near the methamphetamine, and the fact that the residence was located within 1,000 feet of a public secondary school. At one point during the plea, Gines stated he was unsure about the exact quantity of methamphetamine. The government accordingly allowed Gines and his counsel to review the DEA laboratory reports before the court accepted the guilty plea. The matter was then referred to the United States Probation Department for a presentence report.

Appellant subsequently took issue with several factual assertions and conclusions contained in the report, prepared a Position of Party With Respect to Sentencing, and filed the same on February 20, 1991. The government filed its Position of Party report on February 21, 1991. Because of his dissatisfaction over the position taken by the United States Probation Department, appellant prepared a Motion to Withdraw Plea and arranged a meeting between counsel for appellant, counsel for the government, and the probation officer who prepared the report. Appellant subsequently elected not to file the motion to withdraw, but instead filed a Motion For Postponement of Sentencing and Motion For Evidentiary Hearing, along with a Motion For Application of Utah Law to Sentence or in the Alternative, Motion For Departure; and a Motion For Departure For Offer of Cooperation.

On March 7, 1991, the Honorable J. Thomas Greene heard argument on the motions and denied each. The court set a base offense level of 34 pursuant to the quantity of drugs stipulated in the plea agreement, disregarded the enhanced potential of precursor chemicals, disregarded the two point enhancement for the proximity of the school, and added two points for firearms and two points for Gines' aggravated role. After allowing two points credit for acceptance of responsibility, and taking into account the criminal history category of 3, the applicable guideline range was 235 to 293 months. The court sentenced appellant to 235 months (19.6 years) in prison with 10 years of supervised probation following expiration of sentence. Gines appeals from the sentence, asserting that (1) he should have been sentenced under state rather than federal law, or that

the sentencing court should have departed downward from the sentencing guidelines; (2) his right to a speedy trial was violated; (3) he was unfairly denied an evidentiary hearing; and (4) he should be allowed to withdraw his plea of guilty.

## Discussion

I. *Sentencing under federal rather than state law; disallowing a downward departure under the sentencing guidelines.*

Issues of law are reviewed *de novo.* *See United States v. Riles,* 928 F.2d 339, 343 (10th Cir.1991); *United States ex rel. Bergen v. Lawrence,* 848 F.2d 1502, 1505 (10th Cir.), *cert. denied,* 488 U.S. 980, 109 S.Ct. 528, 102 L.Ed.2d 560 (1988); *In re Tri-State Equip., Inc.,* 792 F.2d 967, 970 (10th Cir.1986).

Appellant claims that the court should have applied state rather than federal law at the time of sentencing, relying on *United States v. Williams,* 746 F.Supp. 1076 (D.Utah 1990) in support of his contention. In *Williams,* defendants were convicted of possession and distribution of "crack" cocaine and asserted a due process violation based upon county strike force officials' referral of defendants for federal prosecution. *Id.* at 1079. Since a wide disparity existed between the mandatory drug crime sentences under federal law as opposed to sentences under state law for the same conduct, the court found that defendants' liberty interests were impacted by the referral decision, and held that due process protections were required. *Id.* at 1080. The court declared that the Strike Force must develop constitutionally permissible policies regarding referrals to the U.S. Attorneys' office for federal prosecution. *Id.* at 1083. Since the sentences had been imposed upon defendants in violation of their due process rights, the district court held that relevant federal minimum mandatory sentences and federal sentencing guides would be ignored, and that state penalties would be considered at defendants' resentencings. *Id.*

Nonetheless, our subsequent decision in *United States v. Andersen,* 940 F.2d 593 (10th Cir.1991) controls in this situation.

*Andersen* involved a defendant arrested and charged with possessing a controlled substance in violation of Utah law. *Id.* at 595. The Weber County Attorney's office decided to dismiss the state charges and release the defendant, who was the subject of an ongoing Strike Force investigation. *Id.* Defendant was subsequently arrested based on the same investigation, but charged with violating federal law. *Id.* While conceding that prosecutors act within their discretion in deciding whether to prosecute and what charges to bring, Andersen argued that influences brought to bear by the Strike Force upon the prosecution require written policies and guidelines, and protested that the absence of such policies or guidelines addressing referral decisions violated his due process rights. *Id.* at 596.

We stated that "[t]he ultimate decision whether to charge a defendant, and what charges to file ... rests *solely* with state and federal prosecutors," even though law enforcement investigators may have some influence in charging decisions, and regardless of whether policies and guidelines exist at the agency level. *Id.* at 597 (emphasis provided). Due process rights are not violated when a law enforcement agency refers a case to federal rather than state prosecutors, and a defendant is tried, convicted, and sentenced in federal rather than state court. *Id.* Indeed, a defendant could conceivably be convicted in state court and *also* in federal court for the same illegal conduct, with no resulting constitutional violation. *Id.* (citing *Abbate v. United States,* 359 U.S. 187, 194–95, 79 S.Ct. 666, 670–71, 3 L.Ed.2d 729 (1959)). Therefore, appellant's claim fails.

Appellant's contention that the court should depart downward from the sentencing guidelines similarly fails. The district court has discretion to refuse to depart downward, and this Court does not have appellate jurisdiction to review such a discretionary decision. *United States v. Munoz,* 946 F.2d 729, 730 (10th Cir.1991); *United States v. Soto,* 918 F.2d 882, 883 (10th Cir.1990).

## II. *Violation of speedy trial rights.*

By pleading guilty, appellant waived his right to trial and also waived any non-jurisdictional defenses. *See Riles,* 928 F.2d at 342. The Speedy Trial Act is not jurisdictional in nature. *United States v. Andrews,* 790 F.2d 803, 810 (10th Cir. 1986), *cert. denied,* 481 U.S. 1018, 107 S.Ct. 1898, 95 L.Ed.2d 505 (1987). Appellant thus waived his right to a speedy trial when he pleaded guilty. *See Riles,* 928 F.2d at 342; *United States v. Hickok,* 907 F.2d 983, 985 (10th Cir.1990); *United States v. Davis,* 900 F.2d 1524, 1525–26 (10th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 155, 112 L.Ed.2d 121 (1990); *Andrews,* 790 F.2d at 810. Although defendant filed a motion to dismiss prior to sentencing alleging a violation of the Speedy Trial Act, that action did not preserve a claim under the Act for appeal purposes. A claim under the Act may be preserved by entering a conditional plea pursuant to Fed. R.Crim.P. 11(a)(2), but is subject to waiver by a plea of guilty. *Andrews,* 790 F.2d at 810. In this situation, appellant's plea was not conditional; thus, his right to now claim a violation of the Speedy Trial Act is waived.

## III. *Denial of an evidentiary hearing.*

The standard of review for denial of an evidentiary hearing is abuse of discretion. *United States v. Peterman,* 841 F.2d 1474, 1484 (10th Cir.1988), *cert. denied,* 488 U.S. 1004, 109 S.Ct. 783, 102 L.Ed.2d 774 (1989); *United States v. LoRusso,* 695 F.2d 45, 51 n. 2 (2d Cir.1982); *cert. denied sub nom., Errante v. United States,* 460 U.S. 1070, 103 S.Ct. 1525, 75 L.Ed.2d 948 (1983); *United States v. Papajohn,* 701 F.2d 760, 763 (8th Cir.1983); *United States v. Monaco,* 852 F.2d 1143, 1148 (9th Cir.1988), *cert. denied,* 488 U.S. 1040, 109 S.Ct. 864, 102 L.Ed.2d 988 (1989). Appellant contends that, pursuant to Fed.R.Crim.P. 32(c)(3)(A) and (D), the district court abused its discretion by not allowing an evidentiary hearing on alleged factual inaccuracies contained in

Gines' presentence report and factual findings. The claimed inaccuracies include (a) the quantity of methamphetamine; (b) appellant's role in the offense; (c) enhancement for possession of firearms; (d) criminal history; (e) cooperation with the government, and (f) the court's refusal to apply state law rather than federal law for sentencing purposes.[1]

Initially, we would note that "due process does not mandate an evidentiary hearing to establish the accuracy of ... information contained in a presentence report before it can be considered by the trial court." *Papajohn,* 701 F.2d at 763 (citation omitted); *see also Peterman,* 841 F.2d at 1484; *United States v. Pugliese,* 805 F.2d 1117, 1123 (2d Cir.1986), *cert. denied,* 489 U.S. 1067, 109 S.Ct. 1344, 103 L.Ed.2d 813 (1989). Due process requires the court to balance the necessity for an accurate presentence report with the need to consider all relevant information. *Papajohn,* 701 F.2d at 763; *Peterman,* 841 F.2d at 1484; *Pugliese,* 805 F.2d at 1123. A defendant has the opportunity to explain or rebut information pursuant to Fed.R.Crim.P. 32(c)(3)(A), which provides that:

> ... the court shall provide the defendant and the defendant's counsel with a copy of the report of the presentence investigation ... The court shall afford the defendant and his counsel an opportunity to comment on the report and, in the discretion of the court, to introduce testimony or other information relating to any alleged factual inaccuracy contained in it.

While the rule mandates that defendant be given an opportunity to comment on the report, the court is allowed broad discretion in deciding whether to permit the introduction of testimony or other information. *Peterman,* 841 F.2d at 1484; *Papajohn,* 701 F.2d at 763.

Pursuant to Fed.R.Crim.P. 32(c)(3)(D), the court is accountable for its discretionary decision:

---

1. Since we have already determined that appellant was correctly sentenced under federal law, this issue is moot.

[i]f the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons.

The district court here allowed both parties to present written and oral arguments concerning the contested facts contained in the presentence report. Both parties submitted pleadings setting out their positions with respect to sentencing factors.[2] Moreover, the district court made the requisite findings pursuant to Rule 32.

In regard to appellant's claim disputing the quantity of methamphetamine found, the plea agreement entered into between appellant and the government clearly describes the quantity and the resulting offense level assigned to that amount. The hearing transcript indicates that appellant reviewed the government's lab report, and agreed that the evidence established 5,969.1 grams of methamphetamine. Appellant also agreed that two-level enhancements might be applied for possession of firearms and his role in the offense, as per the plea bargain. The court found the two-level enhancements to be proper. Moreover, the court *declined* to apply a two-level enhancement for committing a drug offense within 1,000 feet of a school, even though appellant agreed that such an enhancement might be applicable.

Furthermore, appellant had full opportunity to comment upon his disagreement with being assigned a Category III Criminal History. Appellant's Position of Party With Respect to Sentencing Factors set forth his complaints about the three level increase for his criminal history. Appellant also spoke to the court about this matter during the sentencing hearing. Gines incorrectly contends that he was "entitled" to present evidence on the issue of the criminal history used to calculate his sentence. As discussed previously, a defendant merely has the opportunity to comment upon his disagreements with presentence report findings, and it is well within the discretion of the district court to deny an evidentiary hearing on the issue. *Peterman*, 841 F.2d at 1484; *Papajohn*, 701 F.2d at 763. The probation office filed a supplemental office report rationalizing its conclusion that a three level enhancement was required: that, coupled with the position of party filed by appellant, provided an adequate basis for an informed decision by the court. The district court fully complied with the requirements of Fed.R.Crim.P. 32(c)(3)(D) by allowing counsel and appellant an opportunity to provide written and oral rebuttal on disputed sentencing information and by making findings with respect to each of the contested issues, and did not abuse its discretion in denying the request for an evidentiary hearing.

■ Finally, in regard to appellant's claim that he should have been allowed a downward departure for substantial assistance, the record demonstrates that the government did not move for such a departure. Gines' counsel agreed at the sentencing hearing that appellant's cooperation was not bargained for, asked for, or evaluated, nor was a motion filed with respect to it by the government. The district court's consideration of a substantial assistance claim is conditioned upon a prior motion by the government. *United States v. Kuntz*, 908 F.2d 655, 657 (10th Cir.1990). Lack of a governmental motion pursuant to section 5K1.1 is a jurisdictional bar to downward departure from the guidelines. *United States v. Perez*, 955 F.2d 34 (10th Cir.1992) (citing *United States v. Long*, 936 F.2d 482, 483 (10th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 662, 116 L.Ed.2d 753 (1991)).

**2.** United States' Position with Respect to Sentencing Factors, Aplt.App. at 14–17; Position of Party with Respect to Sentencing Factors, Aplt. App. at 18–28.

The district court therefore lacked jurisdiction to depart downward from the sentencing guidelines without such a motion. We might consider corrective action if this were "an egregious case—a case where the prosecution stubbornly refuses to file a motion despite overwhelming evidence that the accused's assistance has been so substantial as to cry out for meaningful relief...." *Kuntz*, 908 F.2d at 657 (quoting *United States v. La Guardia*, 902 F.2d 1010, 1017 (1st Cir.1990)). This is not such a case. Although appellant claims that the prosecutor orally agreed to recommend a reduction in sentence for cooperation as part of the plea agreement negotiations, the government denies entering into any implied or explicit agreement with appellant concerning substantial assistance. The government did not bind itself in the plea agreement to file such a motion, and since appellant agreed at the change-of-plea hearing that the plea agreement as it existed was the only agreement between him and the government, he cannot now inconsistently assert that there was an undisclosed oral agreement between them. We find no abuse of discretion in the district court's refusal to grant an evidentiary hearing on the matter and affirm the court's decision not to award a two point credit for substantial assistance.

## IV. *Withdrawal of plea based on alleged breach of plea agreement.*

A post-sentencing motion to withdraw a guilty plea should be granted only to prevent manifest injustice. Fed. R.Crim.P. 32(d), advisory committee's note; *Barker v. United States*, 579 F.2d 1219, 1223 (10th Cir.1978); *Miles v. United States*, 385 F.2d 541, 543 (10th Cir.1967). A plea of guilty is an admission of guilt, and is as conclusive as a jury verdict. *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969). However, "when the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise, and hence his conviction cannot stand...." *Mabry v. Johnson*, 467 U.S. 504, 509, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984).

Appellant argues that the prosecutor breached the plea agreement. In support of his contention that the prosecutor should not have argued that appellant's motion to introduce evidence was precluded by the plea agreement, appellant maintains that the plea agreement did not prohibit or restrict him from introducing evidence to contradict or reduce the 5,969.1 gram amount of methamphetamine claimed by the government. Appellant also protests the fact that the presentence report urged a three level role enhancement, and that the prosecutor did not refute that increase.[3] Furthermore, Gines criticizes the government's argument that he was prohibited by the plea agreement from offering any evidence on the issue of firearm enhancement, asserting that the plea agreement did not prohibit appellant from introducing evidence that the enhancement should not be applied.

The purpose of a plea agreement is not to guarantee that the lower sentencing levels will be applied, but rather to set out parameters within which an appellant understands he will be sentenced. Appellant agreed in his change-of-plea hearing that the plea bargain embodied the entire agreement between him and the government. Accordingly, his rights are as defined by that agreement, conditioned by a presupposition of "fairness in securing agreement between an accused and a prosecutor.... The plea must, of course, be voluntary and knowing and if it was induced by promises, the essence of those promises must in some way be made known." *Santobello v. New York*, 404 U.S. 257, 261–262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971).

The plea agreement procedure is not one in which a defendant has an upper hand in the bargaining process: rather, plea agreements are *voluntary, bargained-for exchanges*. *Mabry*, 467 U.S. at 507, 104 S.Ct.

---

**3.** Appellant seems to ignore the fact that the government specifically asked that the two level increase be adopted rather than the three level increase recommended by Probation. Appellee's Supp.App. at 42–43.

at 2546 (emphasis provided). While a plea agreement cannot leave a defendant in a worse position than if a jury found him guilty of the charges against him, it is not a shield against consequences which a defendant knowingly and willingly accepts upon a plea of guilty. Here, the plea agreement did not provide implicit or explicit assurances that the government would not resist appellant's attempts to obtain an evidentiary hearing; ergo, the government committed no breaches.

◼ Pleading guilty waives a defendant's right to a trial, to confront his accusers, to present witnesses in his defense, to remain silent, and to be convicted by proof beyond a reasonable doubt. *Santobello*, 404 U.S. at 264, 92 S.Ct. at 499 (Douglas, J., concurring). The plea also narrows the "avenue of escape" for a defendant in that he has no *right* to withdraw that plea once it is knowingly and voluntarily entered. *See Mabry*, 467 U.S. at 508–509, 104 S.Ct. at 2546–2547. Accordingly, a court must, for defendant's sake, stringently apply the appropriate constitutional safeguards. *See Santobello*, 404 U.S. at 262, 92 S.Ct. at 498. The record must provide a factual basis for the plea and must show that appellant understood his constitutional rights or affirmatively waived them. *Id.* at 261, 92 S.Ct. at 498; *see also Boykin*, 395 U.S. at 242–243, 89 S.Ct. at 1711–1712.

◼ Extensive change-of-plea procedures ascertain whether or not a defendant is fully aware of the consequences of his plea, and whether or not that plea was voluntary. In this instance, appellant was admittedly aware of the consequences. He understood the minimum and maximum penalties that could be imposed. The record clearly demonstrates appellant's understanding that the court was not bound by the prosecution's recommendation. Appellant's complaint is rooted in his disappointment at receiving a longer sentence than anticipated, rather than on charges the government breached the plea agreement by opposing his attempts to obtain an evidentiary hearing. Disappointment with an imposed sentence is not

grounds for withdrawal of a guilty plea. *Miles*, 385 F.2d at 544.

Appellant further argues that denial of his right to dismissal of the indictments for violation of his right to a speedy trial is good cause to allow him to withdraw his guilty plea. As per our prior discussion, the speedy trial defense was waived by the guilty plea, thus mooting this issue.

We find no manifest injustice entitling appellant to withdraw his plea.

V.  *Conclusion.*

In conclusion, we hold that the district court correctly sentenced appellant under federal law. Appellant waived his Speedy Trial defense when he pleaded guilty, and was therefore not entitled to dismissal of the indictments. No abuse of discretion was committed by the district court's refusal to hold an evidentiary hearing. Furthermore, the prosecutor did not breach the plea agreement and appellant is not entitled to withdraw his guilty plea on that ground; nor is appellant's speedy trial claim a basis for withdrawal of the plea.

AFFIRMED.