**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 25, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

LEVI GENE STRASSER,

    Defendant - Appellant.

No. 10-4218

(D. Utah)
(D.C. No. 2:09-CR-00840-TC-2)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, **McKAY**, and **TYMKOVICH**, Circuit Judges.

Levi Gene Strasser pled guilty to conspiracy to distribute Oxycodone in violation

of 21 U.S.C. §§ 841(a)(1) and 846. He was sentenced to 72 months imprisonment.

Appellate counsel identifies several potential sentencing errors but believes they are

without merit. Therefore, she has submitted an *Anders* brief and a motion for leave to

withdraw as counsel. *See Anders v. California*, 386 U.S. 738 (1967). Counsel provided

---

[*] The parties have waived oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). This case is submitted for decision on the briefs.

This order and judgment is an unpublished decision, not binding precedent. 10th Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1. It is appropriate as it relates to law of the case, issue preclusion and claim preclusion. Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A). Citation to an order and judgment must be accompanied by an appropriate parenthetical notation – (unpublished). *Id*.

Strasser with copies of both documents and the clerk of this court informed him of his right to file a response. *See* 10th Cir. R. 46.4(B)(2). Strasser responded, claiming (1) the government entrapped him; (2) his sentence is procedurally and substantively unreasonable; and (3) trial counsel was constitutionally ineffective. Because no non-frivolous issues are presented or apparent, we grant counsel's motion to withdraw and dismiss the appeal.

## BACKGROUND

Strasser was a mid-level supplier in a conspiracy to distribute Oxycontin tablets (which contain Oxycodone). He and his five co-defendants (who had varying degrees of involvement) were indicted with conspiracy to distribute Oxycodone.

Like his co-defendants, Strasser pled guilty pursuant to a plea agreement. In exchange for his guilty plea, the government agreed to (1) recommend a three-level reduction in his base offense level for acceptance of responsibility, (2) recommend a sentence at the low-end of the advisory guideline range and (3) not seek a sentencing enhancement based on his role in the offense. At the change of plea hearing, the district court said the government had also "somewhat informal[ly]" agreed to recommend a sentence "in line with what [the] co-defendants got, not above what any of the highest got." (R. Vol. IV at 23.) It immediately warned Strasser, however, that it was the court's role to decide the appropriate sentence and it "might give [him] a sentence that's very different from what [his] co-defendants got . . . . It could be severely higher, just depending on what I think is reasonable." (*Id.* at 23-24.)

In his plea agreement and at the change of plea hearing, Strasser admitted he

conspired with others to distribute "approximately 4,000 oxycodone pills." (R. Vol. II at 82; Vol. IV at 26.) The presentence report (PSR), however, held Strasser responsible for approximately 6,000 Oxycodone pills, resulting in a base offense level of 34. *See* USSG §2D1.1(c)(3).[1] Applying a three-level downward adjustment for acceptance of responsibility, *see* USSG §3E1.1, the total offense level was 31. The PSR calculated Strasser's Criminal History Category as III, which included convictions for possession of a controlled substance and driving under the influence of alcohol and two convictions for domestic battery. With that criminal history and a total offense level of 31, the advisory guideline range was 135 to 168 months imprisonment.

Strasser did not object to the PSR. He did, however, seek a downward variance to 48 months imprisonment, the highest sentence received by any of his co-defendants, including the head supplier and several distributors. He minimized his role in the offense, claiming it was substantially less than that of his co-defendants because he was neither a source nor a distributor of the drugs but rather a mere link between the two. He also pointed to his history of mental problems and substance abuse, alleging they may have affected his judgment in deciding to engage in criminal activity.

The court sentenced Strasser to 72 months imprisonment, which amounted to a downward variance of 63 months. While it recognized the highest sentence received by a co-defendant was 48 months, it said Strasser's criminal history was more severe and

---

[1] Strasser was sentenced pursuant to the 2009 edition of the United States Sentencing Commission Guidelines Manual. All citations to the guidelines in this decision refer to the 2009 guidelines unless otherwise indicated.

included domestic violence inflicted on his then wife (now ex-wife). In that regard, the court noted a letter it had received from the parents of his ex-wife describing the violence inflicted by Strasser upon their daughter; the court found the descriptions to be "most disturbing." (Vol. V at 12.) It further differentiated Strasser from his co-defendants, stating they had either a lesser role in the offense or had provided substantial assistance to the government.

## DISCUSSION

Counsel suggests the district court may have committed several sentencing errors. Having carefully reviewed those alleged errors, we conclude only two need be addressed—whether the government breached the plea agreement and whether Strasser's sentence is substantively reasonable.[2] We also address Strasser's claimed errors.

---

[2] In addition to the breach of contract and substantive reasonableness arguments, counsel suggested the district court may have: (1) violated Rule 32(i)(1)(A) of the Federal Rules of Criminal Procedure by failing to personally ask Strasser—as opposed to his counsel—whether he had reviewed the PSR; (2) violated Rule 32(i)(1)(B) by failing to disclose to Strasser it would be relying on the letter from his ex-wife's parents at sentencing; (3) deprived Strasser of due process by relying on the letter; and (4) imposed a procedurally unreasonable sentence because the base offense level should have been 32, not 34, as Strasser only admitted to distributing 4,000 Oxycontin tablets, not 6,000 as noted in the PSR. Because Strasser did not object to any of these alleged errors in the district court, our review is for plain error. *See United States v. Martinez-Barragan*, 545 F.3d 894, 899 (10th Cir. 2008); *United States v. Romero*, 491 F.3d 1173, 1179 (10th Cir. 2007). We see no error.

Counsel confirmed to the district court that he and Strasser had read and discussed the PSR and indeed had asked for a continuance in order to do so. This is sufficient to satisfy Rule 32(i)(1)(A). *See Romero*, 491 F.3d at 1180.

The letter from the ex-wife's parents was provided to Strasser's counsel (who attempted to discount its reliability because it was not made by the victim herself) and essentially reiterated the information contained in the PSR concerning Strasser's domestic battery convictions. Therefore, any Rule 32(i)(1)(B) error was harmless. *See*

A.      Breach of Plea Agreement

Counsel suggests the government may have breached the plea agreement by not recommending Strasser receive a 48-month sentence—the highest sentence imposed on a co-defendant. While we normally would review this issue de novo, *see United States v. Burke*, 633 F.3d 984, 994 (10th Cir.), *cert. denied*, 131 S. Ct. 2130 (2011), Strasser did not object in the district court. Therefore, our review is for plain error. *Puckett v. United States*, 556 U.S. 129, 129 S. Ct. 1423, 1428 (2009). "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Gonzalez–Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (quotations omitted). We see no error.

"To determine whether a breach has occurred, we 1) examine the nature of the promise; and 2) evaluate the promise in light of the defendant's reasonable understanding

---

Fed. R. Crim. P. 52(a); *see also United States v. Forsythe*, 156 F.3d 1244, No. 97-6250, 1998 WL 539462, at \*6 (10th Cir. 1998) (unpublished) (applying harmless error review to Rule 32(c)(3)(A), the precursor to Rule 32(i)(1)(B)). And, because it was consistent with the information contained in the PSR, we cannot say the letter was so inherently unreliable as to have violated Strasser's due process rights. *See United States v. Browning*, 61 F.3d 752, 755 (10th Cir. 1995) ("[D]efendants have a due process right not to be sentenced on the basis of materially incorrect information.").

Finally, the attribution of 6,000 tablets to Strasser was based on relevant conduct. *See* USSG §1B1.3, comment. n.2 ("[I]n a case of "jointly undertaken criminal activity, . . . a defendant is accountable for the conduct . . . of others that was both (A) in furtherance of the jointly undertaken criminal activity; and (B) reasonably foreseeable in connection with that criminal activity."). The investigation revealed co-defendant Michael Diaz had sold approximately 6,000 tablets to a confidential informant and co-defendant Erick Gleave. Diaz stated he had obtained these tablets from Strasser and indeed a surveillance team witnessed Diaz obtaining 4,000 tablets from Strasser.

of the promise at the time of the guilty plea." *Burke*, 633 F.3d at 994 (quotations omitted). "General principles of contract law define the government's obligations under the agreement, looking to the express language and construing any ambiguities against the government as the drafter of the agreement." *Id.* (quotations omitted). Here, the government did not agree in the written plea agreement to recommend a sentence in line with the co-defendants. Rather, that promise was made orally. And, while the district court informed Strasser at the change of plea hearing that the government had agreed to recommend a sentence in line with and not higher than the other co-defendants, the government stated at sentencing it merely agreed to recommend a sentence in line with the co-defendants "given his relative culpability" and role in the offense. (R. Vol. V at 15.) Even assuming, however, the government promised to recommend a sentence not higher than the codefendants and that oral promise is enforceable, we see no breach.

The government initially informed the court of its oral agreement to recommend a sentence in line with the co-defendants and then noted the sentences each defendant received. The court then questioned the government about the co-defendant's criminal histories and roles in the offense. In response, the government outlined co-defendants Brett Shane Blodgett, Michael Diaz and Brad Proctor's roles in the offense, guideline ranges, criminal histories (or lack thereof), eligibility for safety valve relief and provision of substantial assistance, if any, to the government. It then compared these individuals to Strasser, who had a higher criminal history, was not eligible for safety valve relief, did not provide substantial assistance and was not a minor participant. The government concluded:

> [Strasser's] sentence should be in line with the other defendants but also taking into account his different criminal history and how he stands before the court in a different position without the substantial assistance or without the minor [role].
>
> So, while I don't disagree that a sentence below the recommended guideline range would be appropriate and reasonable, I guess I'd leave it to the court's discretion as . . . to where he would appropriately fit [given all those facts and circumstances].

(R. Vol. V at 17-18.)

The government never advocated for a sentence above the other co-defendants. Instead, it informed the court of its agreement to recommend a sentence in line with the other co-defendants and left it within the court's discretion as to where he fit. While it compared Strasser's circumstances to those of his co-defendants, it did so only in response to the court's question and the information it provided was factually correct, legally neutral and non-argumentative. Such conduct does not constitute a breach. *See, e.g., United States v. Rodriguez-Delma*, 456 F.3d 1246, 1250-51 (10th Cir. 2006) (government did not breach its agreement to not oppose defendant's request that he not receive a role-in-the-offense enhancement when it summarized the offense conduct because the summary was "factually accurate, legally neutral and non-argumentative"); *United States v. Peterson*, 225 F.3d 1167, 1171-72 (10th Cir. 2000) (government did not breach promise not to oppose defendant's request for a downward departure by merely drawing court's attention to facts in the PSR without making any legal argument concerning those facts); *United States v. Brye*, 146 F.3d 1207, 1211 (10th Cir. 1998) ("[T]he government breaches an agreement not to oppose a motion [for downward departure] when it makes statements that do more than merely state facts or simply

validate facts found in the Presentence Report and provides a legal characterization of those facts or argues the effect of those facts to the sentencing judge.") (quotations omitted).

B.     Entrapment

Strasser argues the government entrapped him by using co-defendant Diaz to pressure him into supplying Diaz with Oxycontin pills. But by pleading guilty and waiving his right to trial, Strasser waived all non-jurisdictional defenses including entrapment. *See United States v. Riles*, 928 F.2d 339, 342 (10th Cir. 1991).

C.     Procedural Reasonableness of Sentence

Strasser contends his criminal history category was incorrectly calculated because he claims his prior conviction for possession of a controlled substance was dismissed and he was never convicted of domestic battery because the charges were reduced. "A sentence is procedurally unreasonable if the district court incorrectly calculates . . . the Guidelines sentence . . . ." *United States v. Haley*, 529 F.3d 1308, 1311 (10th Cir. 2008). Because Strasser did not object at sentencing to the calculation of his criminal history category despite having the opportunity to do so, we review for plain error. *United States v. Martinez-Barragan*, 545 F.3d 894, 899 (10th Cir. 2008). Again, we see no error. Strasser provides no support, other than his bare allegations, that his controlled substance conviction was dismissed and that he was never convicted of domestic battery. *See Peterson v. Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.") (quotations omitted).

D.     <u>Substantive Reasonableness of Sentence</u>

Counsel suggests Strasser's sentence is substantively unreasonable because it is greater than necessary to reflect the purposes of sentencing under 18 U.S.C. § 3553(a) and results in an unjustifiable sentencing disparity among co-defendants.  Strasser, while grateful for a sentence well below the advisory guideline range, nevertheless believes his sentence is substantively unreasonable and he should have been sentenced to 48 months consistent with his co-defendants.

"A sentence is substantively unreasonable if the length of the sentence is unreasonable given the totality of the circumstances in light of the 18 U.S.C. § 3553(a) factors."  *Haley*, 529 F.3d at 1311.  Strasser did not object to the substantive reasonableness of his sentence in the district court.  "But when the claim is merely that the sentence is unreasonably long, [i.e., substantive unreasonable,] we do not require the defendant to object in order to preserve the issue," *United States v. Torres-Duenas*, 461 F.3d 1178, 1183 (10th Cir. 2006), so long as the defendant at least made an argument for a lower sentence before the district court, which Strasser did.  *See United States v. Mancera-Perez*, 505 F.3d 1054, 1059 (10th Cir. 2007).  Therefore, we review for an abuse of discretion.  *See United States v. Regan*, 627 F.3d 1348, 1352 (10th Cir. 2010), *cert. denied*, 131 S. Ct. 2915 (2011).

One of the factors a court should consider in determining the particular sentence to be imposed is "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct."  *See* 18 U.S.C. § 3553(a)(6). "On its face, this factor requires a district court to take into account only

disparities nationwide among defendants with similar records and Guideline calculations." *United States v. Martinez*, 610 F.3d 1216, 1228 (10th Cir.), *cert. denied*, 131 S. Ct. 543 (2010). However, since *Gall v. United States*, 552 U.S. 38 (2007), we have concluded that "although § 3553(a) does not require a consideration of co-defendant disparity, it is not improper for a district court to undertake such a comparison." *Martinez*, 610 F.3d at 1228 (citation omitted).

Here, Strasser and his co-defendants were found guilty of conspiracy to distribute Oxycodone. Strasser received a sentence 24 months higher than the highest sentence received by a co-defendant. Nonetheless, "[w]hile similar offenders engaged in similar conduct should be sentenced equivalently, disparate sentences are allowed where the disparity is explicable by the facts on the record." *United States v. Davis*, 437 F.3d 989, 997 (10th Cir. 2006) (quotations omitted). The district court explained the disparity based on Strasser's "significantly higher" criminal history (which included violence), his non-minor role in the offense,[3] and the fact Strasser did not provide substantial assistance to the government. (R. Vol. V at 18.) Indeed, it was Strasser's criminal history which resulted in an advisory guideline range higher than that of any of his co-defendants. Because Strasser's criminal record, role in the offense and degree of cooperation was not similar to that of his co-defendants, there was no inappropriate sentencing disparity with

---

[3] While Strasser attempted to minimize his role in the offense, claiming he was merely a link between supplier and distributors, the district court characterized him as "probably number two" in the conspiracy hierarchy. (R. Vol. V at 18.) The evidence supports that characterization: Blodgett supplied Oxycontin tablets to Strasser, who in turn gave them to Diaz to sell. Proctor helped Diaz sell. The other two co-defendants, Tyler Saxton and Erick Gleave, were customers of Diaz and Proctor. Gleave also sold.

respect to this crime and Strasser offers nothing to suggest a systemic disparity, that is, a disparity between his sentence and the sentences imposed on the universe of similarly situated defendants.

In any event, "§ 3553(a)(6) is but one factor that a district court must balance against the other § 3553(a) factors in arriving at an appropriate sentence." *Martinez*, 610 F.3d at 1228. Other factors include (1) "the nature and circumstances of the offense," (2) "the history and characteristics of the defendant," and (3) the need for the sentence imposed to "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," "afford adequate deterrence to criminal conduct" and "protect the public from future crimes of the defendant." *See* 18 U.S.C. § 3553(a)(1), (2)(A), (B), (C). In addition to noting Strasser's significant criminal history, the district court determined a 72-month sentence was reasonable given Strasser's non-minor role in the offense, the seriousness of the crime and the need to protect the public. We see no abuse of discretion.

E.     Ineffective Assistance of Counsel

Strasser contends his trial counsel was ineffective for allegedly telling him he would receive a 48-month sentence, not objecting to him being held accountable for 6,000 pills rather than the 4,000 he pled to, and not objecting to the district court's reliance on the letter from his ex-wife's parents. Counsel also suggests a number of ineffective assistance of counsel claims.

"Ineffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal. Such claims brought on direct appeal are

- 11 -

presumptively dismissible, and virtually all will be dismissed." *United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995). Only in rare instances, where the record is sufficiently developed for effective review, will an appellate court resolve an ineffective assistance of counsel claim not raised in the trial court. *United States v. Wynne*, 993 F.2d 760, 765-66 (10th Cir. 1993) (citation omitted). However, "even if the record appears to need no further development, the claim should still be presented first to the district court in collateral proceedings . . . so the reviewing court can have the benefit of the district court's views." *Galloway*, 56 F.3d at 1240. "An opinion by the district court is a valuable aid to appellate review for many reasons, not the least of which is that in most cases the district court is familiar with the proceedings and has observed counsel's performance, in context, firsthand." *Id.*

Further development of the record and an opinion by the district court would be helpful to our review. Therefore, we decline to address the ineffective assistance of counsel claims on direct appeal.

After a careful review of the record, we agree with counsel—there are no arguably meritorious claims. We **GRANT** counsel's motion to withdraw and **DISMISS** this appeal.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge

- 12 -